Saylor *vs.* Plaine, *et al.*

---

(Decided 25th June, 1869.)

---

REUBEN SAYLOR *vs.* DAVID PLAINE, JONATHAN JACOBS, and others.

*Construction of a Will—What terms will create a Trust—Trusts by Implication—A Paper signed by the Testator but not referred to in the Will, not a sufficient declaration of a Trust to explain the Will.*

A testator died in 1835, leaving a will by which he disposed of his property as follows: " I give and bequeath to my wife L. P, all my property both real and personal, that now belongeth or in any wise appertaineth unto me, or that may or shall at any time hereafter belong unto me, to be wholly hers during her widowhood, out of which property she is to pay all my legal debts, and, at the determination of her widowhood, I give and bequeath unto M. D, I. S, T. O and A. W, all the property both real and personal, that my wife shall possess at the termination of her widowhood, to dispose of according to his or their verbal directions, should her widowhood terminate in death; but should her widowhood

Saylor *vs.* Plaine, *et al.*

terminate in marriage, I give and bequeath unto the said M. D, I. S, T. O and A. W, only three-fourths of the property both real and personal that shall be possessed by the said L. P at the termination of her widowhood by marriage, and the said three-fourths to be disposed of according to the verbal directions of the said D, S, O, and W, or either of them ; and the remaining one-fourth I will and bequeath unto the said L. P to be wholly hers to make use of as she may see or think proper." The widow lived until 1866, and after her death there was found among her papers, an instrument of writing, signed by the testator, without date, containing directions to the said D, S, O, and W, as to the manner in which he desired them to dispose of the property upon the termination of the widowhood of his wife either by marriage or death.   On the back of this instrument was found the following endorsement: " This paper with the contents, is not to go to Court, but to be kept at home in the hands of the executrix or D, S, O, or W."· On a bill filed after the death of the widow, to obtain a construction of this will, HELD:

1st.  That no positive rule can be laid down which shall determine in all cases what terms or expressions will carry a beneficial interest, or which will create a trust.

2d.  That any language which satisfactorily indicates an intention to stamp upon the devise the character of a trust, will be sufficient.

3d.  The *heir* is always favored in law, and is not to be excluded on mere conjecture, on the contrary there must be satisfactory evidence of an intention to give a *beneficial interest* to the devisee, and not merely negative evidence that no benefit was intended to the heir.

4th.  That the devise to M. D, I. S, T. O and A. W, was upon a trust, the terms of which were not declared in the will, and the paper found after the death of the widow was not a valid declaration of the trusts intended, and therefore a trust arose by implication of law in favor of the heirs of the testator in regard to the real estate, and as to the personal property in favor of his personal representatives.

APPEAL from the Circuit Court for Frederick County, in Equity.

The bill in this case was filed by the brothers and sisters of Jonathan Plaine, deceased, and the children of brothers and sisters of Lydia Plaine his wife, now deceased, against Reuben Saylor, the appellant, eldest son of Jacob Saylor, deceased, surviving trustee of the will of

Jonathan Plaine, deceased, to establish the trusts of the will of said Jonathan Plaine. The terms of the will are set forth in the opinion of the Court.

The bill charged that the testator, by an instrument in writing, written by him, not dated, but executed simultaneously with the date of his will, declared and set forth the trusts of his estate, which his friends, Diehl, Ogle, Saylor and Wolfe, were to execute.

The Court below passed a decree in favor of the complainants, ordering a sale of the property for the purpose of distributing the proceeds according to the provisions of the will, and the declaration of trusts contained in the said paper writing signed by the testator.

From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*Wm. P. Maulsby,* for the appellant.

The demise to Diehl, Saylor, Ogle and Wolfe, passed to them a fee and not a trust. To constitute a trust, the fiduciary words must be imperative on the donee. If they confer a mere power or authority, and leave it to the discretion of the donee to apply, or not, the gift to the designated purpose, no trust will be created. *Hill on Trustees,* 66 *(marg.,)* 101 *(top)*; *Morice vs. The Bishop of Durham,* 10 *Vesey,* 536, and cases referred to in the note.

A trust cannot be inferred from the construction which the Court may place on the words of an instrument, as has been done by the Court below in this case. There are fixed rules which must govern the construction; two have been mentioned—the designation of a purpose, and the use of imperative words. In the absence of words gratifying these rules, the estate vests in the donee or devisee. 2 *Story's Equity, sec.* 1068 *a,* 1069 *and note* 2, 1070 *and note* 2, where the authorities are collected.

The current of decisions of late years has been against converting the legatee into a trustee. *Meredith vs. Heneage*, 1 *Simons*, 542, and numerous cases collected in note 2 to *sec.* 1069 *of* 2 *Story's Equity* ; *Sale vs. Moore*, 1 *Simons*, 534.

There are no such words in the will as will enable the Court to determine that it was in the mind of the testator to create a trust in the devisees, Diehl, Saylor, Ogle and Wolfe. *Podmore vs. Gunning*, 10 *Eng. Chan. Rep.*, 241 (7 *Simons*, 644.)

Exhibit five cannot aid the language of the will, so far as the creation of the trust is concerned. Nor is that paper a good declaration of a trust. The case of *Adlington vs. Cann & Andrews*, 3 *Atkyns*, 141, appears to be directly in point, and to cover this question. There was a similar paper to this, and on page 151 the Lord Chancellor considers it, and decides that it cannot be taken to be a declaration of a trust for reasons fully stated. *Strickland vs. Aldridge*, 9 *Ves.*, 515.

*William J. Ross*, for the appellees.

Diehl, Saylor, Ogle and Wolfe had not, nor had either of them any beneficial interest in the estate of the testator under the provisions of the will, and if they or either of them do not take beneficial interests as of their own right, then a trust is created by the will, and they hold the property as trustees. *Mory, Ex'x of Michael vs. Michael*, 18 *Md.*, 228.

Any expression in the will which shows that the devisee is not to have the beneficial interest in the property devised, creates a trust. *Hill on Trustees*, 99 *top*, 65 *marg.;* *Morice vs. Bishop of Durham,* 9 *Vesey*, 399 ; *Morice vs. Bishop of Durham*, 10 *Vesey*, 537 ; 2 *Story's Equity*, *secs.* 979, 979 *a*, 979 *b, and* 980 ; *Fisher vs. Fields*, 10 *Johns. Rep.,* 505 ; *Hoge vs. Hoge*, 1 *Watts*, 214.

Saylor *vs.* Plaine, *et al.*

The words " trust " or " trustee " are not necessary to create a trust. *Hill on Trustees*, 99.

The trust need not be created in writing, but must be manifested in writing, and signed by the party creating the trust, or by the party charged with the trust, as trustee. *McCubbin vs. Cromwell,* 7 *G. & J.,* 163 ; *Jackson vs. Moore,* 6 *Cowen,* 725, 726 ; *Moran vs. Hays,* 1 *Johns. Chan. Rep.,* 342 ; *Steere vs. Steere,* 5 *Johns. Chan. Rep.,* 12 ; *Foster vs. Hall,* 3 *Vesey,* 696 ; *Adams' Equity,* 100, *top and note* 2.

In the case before the Court, the paper manifesting the trust is written and signed by the party creating the trust.

The personal estate of the testator goes to his next of kin, and his real estate passes to his heirs at law. *Morice vs. Bishop of Durham,* 10 *Vesey,* 537 ; *Hill on Trustees, top* 172, *marg.* 114 ; *Adams' Equity, top* 106, *marg.* 31, *&c.*

ROBINSON, J., delivered the opinion of the Court.

Jonathan Plaine died in the year 1835, having by will disposed of his property as follows :

" I give and bequeath unto my wife, Lydia Plaine, all my property, both real and personal, that now belongeth or in anywise appertaineth unto me, or that may or shall at any time hereafter belong unto me, to be *wholly hers* during her widowhood, out of which property she is to pay all of my legal debts, and at the termination of her widowhood, I give and bequeath unto Martin Diehl, Jacob Saylor, Thomas Ogle and Abraham Wolfe, of Martin, all the property, both real and personal, that my wife shall possess at the termination of her widowhood, to dispose of according to his or their verbal directions, should her widowhood terminate in death ; but should her widowhood terminate in marriage, I give and bequeath unto the said Diehl, Saylor, Ogle and Wolfe, only three-fourths of the property, both real and personal, that shall be pos-

sessed by the said Lydia Plaine at the termination of her widowhood by marriage, and the said three-fourths to be disposed of according to the verbal directions of the said Diehl, Saylor, Ogle and Wolfe, or either of them; and the remaining one-fourth I will and bequeath unto the said Plaine to be *wholly hers* to make use of as she may see or think proper."

Lydia Plaine, the widow, lived until 1866, and after death there was found among her papers, carefully put away, an instrument of writing, signed by the testator, Jonathan Plaine, without date, containing directions to the said Diehl, Saylor, Ogle and Wolfe, as to the manner in which he desired them to dispose of the property upon the termination of the widowhood of his wife, either by marriage or death.

On the back of this instrument was found the following endorsement:

"This paper with the contents is not to go to Court, but to be kept at home in the hands of the executors, or Diehl, Saylor, Ogle or Wolfe."

The first question to be decided is, whether Diehl, Saylor and others take a beneficial interest in the property under the will, or was it devised to them in trust? We deem it unnecessary to review the many cases in which this question has arisen upon the construction of wills. It is sufficient to say that no positive rule can be laid down which shall determine in all cases what terms or expressions will carry a beneficial interest, or what will create a trust; Courts, refusing to be governed by arbitrary rules or mere technical phraseology, will look to the whole will in order to ascertain the intention of the testator.

The words " *Trust* " or Trustees have, it is true, a defined and technical meaning, and are more generally as well as more properly used, but it is well settled that there is no magic in particular words, and any language

which satisfactorily indicates an intention to stamp upon the devise the character of a trust will be sufficient.

If the intention be not plainly expressed, or if the language used be ambiguous, there are certain well-established rules which Courts will invoke to aid them in the construction of the instrument.

The *heir* is always favored in law, and is not to be excluded on mere conjecture. On the contrary, there must be satisfactory evidence of an intention to give a *beneficial interest* to the devisee, and not merely negative evidence, that no benefit was intended to the heir. "For," says *Lewin on Trusts*, 181, "the trust results to him not so much on the ground of intention, but because the devisor has declared no intention."

In regard to the will before us, although it is inartificially drawn, and its provisions somewhat curious, yet looking to its whole context, we think there can be but little doubt as to its proper construction.

In the first place, the testator devises to his wife during her widowhood, all the property, real and personal, with remainder over to Diehl, Saylor, Ogle and Wolfe, "*to dispose of according to his or their verbal directions.*"

In the event of her marriage, he gives to her one-fourth of the property, "*to be wholly hers to make use of as she may see or think proper,*" and the remaining three-fourths to the said Diehl and others, "*to be disposed of according to the verbal directions of the said donees or either of them.*"

Now we cannot fail to observe the striking difference in the language used in the devise to the wife, and in the limitation over to Diehl and others. In the former he directs that the property shall be *wholly hers,* to make use of as she may see or think proper. The intention to give the wife *a beneficial* interest is plainly expressed, and the language used is clear and unambiguous. The property is to be "*wholly hers*" during the widowhood, and in the event of marriage, one-fourth is to be "*wholly hers,* to

make use of as she may see or think proper." But in the limitation over to Diehl, Saylor, Ogle and Wolfe, these significant words are entirely omitted. He does not say that the property shall be *wholly theirs* upon the termination of the intermediate estate, but devises it to them "to *be disposed of according to their* verbal directions, or the directions of either of them."

If it were the purpose to limit the estate over to them in fee, why authorize them to dispose of it according to their verbal directions? Can we presume that the testator did not know that a devise of the fee necessarily carried with it the power of disposing of the property in any manner which the devisees might see proper?

Again, is it reasonable to presume that he intended to give to each a beneficial interest, and at the same time to authorize either one of them to dispose of the whole property without the consent or acquiescence of the other devisees equally interested?

Looking, therefore, to the face of this strange and curious will, and comparing its several provisions with each other, we think it may be fairly inferred that the testator did not design to give to these donees, who were neither his heirs nor next of kin, but strangers in blood, a beneficial interest in the property, but that they should take it in trust.

If so, and the terms of the trust are not declared, or are too vague to be executed, the next question to determine is, whether the instrument of writing, found among the papers of the widow, and containing directions to the donees as to the disposition of the property, can be admitted as a declaration of the trust?

The law has wisely thrown around the execution of wills and testamentary papers certain solemnities, the observance of which is necessary to their validity. In the disposition of real estate, it provides that they shall be

Saylor *vs.* Plaine, *et al.*

signed by the testator, and attested by three or four credible witnesses.

Now, if this *unattested* paper, found *thirty years* after the death of the testator, is to be received as a declaration of trust, if it is to be engrafted on the will, and to give effect to the same, if, in fact, it is to control the disposition of the real estate of the testator, would it not be a palpable violation of the statute?

The law upon this subject is thus briefly stated by *Lewin on Trusts, sec.* 69. " Should the testator devise the estate in such language that the will passes the legal estate only to the devisee, and manifests an intention of not conferring the equitable, in short, stamps *the devisee* with the character of trustee, and yet does not define the particular trusts upon which he is to hold; in this case, no paper not duly attested (except, of course, papers existing at the date of the will, and incorporated by reference) will be admissible to prove what were the trusts intended. Nor will the devisee be allowed to retain the beneficial interest himself; but while the legal estate passes to him, the equitable will result to the testator's heirs at law."

In *Briggs vs. Penny,* 3 *De Gex & Smale,* 525, the testatrix bequeathed to Sarah Penny, all the rest and residue of her personal estate, " well knowing that she will make a good use, and dispose of it in a manner in accordance with my wishes."

After the death of the testatrix, four papers were found in her writing-desk, all in her handwriting, and without date. These papers contained directions to the said Sarah Penny, as to the manner in which the testatrix desired her to dispose of the property bequeathed in her will.

Two questions arose in the case. First, did Sarah Penny take a beneficial interest under the will, or was it a bequest in trust? Secondly, if a trust, could the four unattested papers be admitted for the purpose of ascertaining the terms of the trust?

The Vice-Chancellor held that the bequest was in trust, but refused to admit either of the four papers, for the purpose of ascertaining or declaring the terms of the trust. He denied that they had any force or efficacy as an agreement, a gift, or a declaration of trust, or in any other manner.

The same question was also decided in *Adlington vs. Cann*, 3 *Atk.*, 141.

An exception to this general rule, which excludes informal papers and parol evidence, has been recognized in cases where the testator devises or bequeaths property to a party, under an agreement or understanding that he would hold it in trust for another. In such cases, Courts will not permit the devisee to rely upon the Statute, for the purpose of perpetrating a fraud. It was upon this principle that *Podmore vs. Gunning*, 10 *Eng. Ch. Rep.*, 247, and other cases of that class were decided.

Another exception has been admitted, where the law raises a trust by presumption. Before the Statute, 1 *William IV*, *ch.* 40, the executor was entitled to the undisposed of residuary estate, but it was held that whenever there was a bequest to the executor, the law raised a presumption that he was to hold the residue of the estate for the next of kin or parties entitled. In such cases it has been held that parol evidence is admissible for the purpose of rebutting the trust, but it has scarcely ever been received without eliciting some expression of disapprobation. There is certainly no disposition on the part of the Courts to extend the exceptions.

Where, however, the trust results by operation of law, as for instance, where there is a devise or bequest to a person " upon trust," and no trust is declared, or upon certain trusts that are *too* vague *to* be executed, or upon trusts to be thereafter declared and no declaration is made, or upon trusts that are unlawful, in such cases, a trust results to the heirs at law or personal representatives, and

extrinsic evidence will not be received. *Lewin on Trusts*, 183; *Langham vs. Sandford*, 17 Ves., 442; *Walton vs. Walton*, 14 Ves., 322; *Rackfield vs. Coreless*, 2 P. Wms., 158.

The property in this case being devised and bequeathed to the donees upon trust, the terms of which are not declared in the will, it must follow that a trust arises by operation of law in favor of the heirs of the testator in regard to the real estate, and as to the personal property, in favor of the personal representatives.

The decree of the Court below will, therefore, be affirmed in part, and reversed in part, and the cause remanded, in order that a decree may be passed in conformity with the opinion of this Court.

*Decree affirmed in part, and reversed in part,*
*and the cause remanded.*

(Decided 28th June, 1869.)