WILLIAM G. WILLIAMS, Executor of ELIZA ANDER-
SON, and others *vs.* RICHARD S. WORTHINGTON, and
others.

*Precatory words in Wills—When to be construed as creating
a Trust—Effect of absolute power of disposition in first
taker—Property which is subject of trust must be definite
and certain.*

A. A. died leaving a last will and testament, whereby he devised and
bequeathed as follows : "It is my will and desire, and I hereby devise and
bequeath all my property, real, personal and mixed, to my dear wife E. A.,
and her heirs and assigns forever, and it is my request and desire that my
said wife E. A. should by last will and testament devise and bequeath all of
said property at her death remaining in her possession to my friend B. W.,
and to E. W., their heirs and assigns forever, share and share alike." Said
E. A. afterwards died without devising and bequeathing to B. W., his heirs
and assigns the balance of said property remaining in her possession at the
time of her death, according to the said request of A. A., contained in his
last will and testament. The heirs of B. W. accordingly filed their bill of
complaint claiming that the devise and bequest of A. A. to his said wife
E. A. created a trust in favor of said B. W. as to such part of said property
as should remain in the possession of E. A. at the time of her death. HELD :

1st. That precatory words may create a trust, but the effect of such expres-
sions in creating trusts depends entirely on the supposed intention of the
testator, to be gathered from the tenor of the instrument.

2nd. That in order to justify a construction of precatory words in a will as
creating a trust, it must appear that the property which is the subject of the
trust is definite and certain.

3rd. That the power of disposition by E. A., implied in the absolute gift of
the property to her, was not limited or controlled by the subsequent words
which had reference only to such property as might remain in her possession
at the time of her death.

4th  That precatory words will not be construed to create a trust where the
gift to the first devisee is absolute in its terms followed by precatory words

indicating the disposition to be made of what might remain of the property at the death of the first devisee.

5th. That words of recommendation and other words precatory in their nature are not to be construed as peremptory unless by the context of the will that meaning is forced upon them.

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, ALVEY, and ROBINSON, J.

*James Revell* and *William H. Tuck*, for the appellants.

1. It is not denied that words of request, &c., may create a trust, but they are not always imperative ; they are flexible in character, and whether they are to prevail in any case is a question of construction. They have no fixed technical force, and ought to be interpreted according to the simplest and most obvious sense that can be put upon them, to reach the intent of the testator. *Negro Chase vs. Plummer,* 17 *Md.,* 165 ; 1 *Jarman,* 339, *note; Gilbert vs. Chapin,* 19 *Conn.,* 342. The cases are so numerous and dissimilar, if not conflicting, that it is impossible to extract from them a positive rule of interpretation, except that there must be an *intention to create a trust.* And the object and subject-matter on which it is to operate must be clearly and certainly pointed out. If the donee is made absolute owner of the property, and is to exercise a discretion whether he will or not carry out the words of request, &c., a trust will not be declared.

In *Williams vs. Williams,* 1 *Sim.; N. S.,* 368, Lord CRANWORTH said : " The real question in all these cases always is whether the wish or desire expressed by the

testator is meant to *govern* the conduct of the party to whom it is addressed, or whether it is merely an *indication* of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it however to the party to exercise his own discretion."

"Where the property to which the supposed trust is to attach is not certain or definite ; wherever a discretion or choice is given ; *wherever the prior disposition imports absolute and uncontrollable ownership ;* Courts will not create a trust upon words of this character." 1 *Jarman,* 338, *note ;* 2 *Story's Eq., sec.* 1070 ; *Howarth vs. Dewell,* 6 *Jur., N. S.,* 1360.

If these trusts ever were favored, the leaning of the Courts of late years has been against them, because the construction is opposed to the plain meaning of the words, making mandatory and imperative language that, in ordinary acceptation, is discretionary and optional ; defeating a previous positive devise by words of mere request, when those of command, leaving no option, might have been used, if the testator had so intended. 2 *Story's Eq.,* 1069 ; 1 *Jarman,* 338, 339, 344 ; 1 *Redfield on Wills,* 713, 715 ; *Lawless vs. Shaw,* 5 *Cl. & Finl.,* 129 ; *Sale vs. Moore,* 1 *Simons,* 534 ; *Pushman vs. Filliter,* 3 *Ves.,* 7 *note.*

It will be found that the American cases have not enforced these trusts as rigidly as was done in the early English cases. *McConkey's Appeal, Am. L. R., O. S.,* 342 ; *Gilbert vs. Chapin,* 19 *Conn.,* 342.

2. This testator intended to give his property absolutely to his wife, except the negroes, leaving to her discretion the execution of this request.

The words of devise to her have this and no other legal import, and are to have effect according to their technical meaning, unless it is clearly shewn that he intended otherwise, because he is to be presumed to have used them in that sense :—" To my dear wife and her heirs and assigns forever." In some of these cases the decision has turned

upon the extent of the interest bequeathed to the donee, as showing that an absolute gift was intended, on which no trust could arise.    2 *Story's Eq.*, sec. 1070 ; 1 *Jarman*, 338, *note*.

Do the superadded words impair this absolute estate by raising a trust as now contended ?    This depends on the question of certainty as to the property to be affected by the trust.

The cases show that a trust will not be declared if the request or desire is made as to " *what shall or may be left*," because these words import that something may be taken from the property in the life-time of the donee, which, of itself, creates uncertainty as to the subject of the trust. *Pushman vs. Filliter*, 3 *Ves.*, 7 ; *Wynne vs. Hawkins*, 1 *Bro. Ch. Rep.*, 179, *marg.* ; *Meredith vs. Heneage*, 1 *Simons*, 542 ; *Wilson vs. Major*, 11 *Ves.*, 205 ; *Bull vs. Kingston*, 1 *Merivale*, 314 ; *Sprague vs. Barnard*, 2 *Bro. Ch.*, 585, *marg.*

In this will, the words are " all of the said property at her death *remaining* in her possession."    Is there any difference in meaning between *what is left* and what *remains?*    If this will had said, " all of the said property at her death *left* in her possession," the case would be clearly with the appellants, on the authority of adjudged cases.    Nine men in ten, in drawing their own wills, would use these expressions indifferently, as meaning the same thing, and not one would imagine that by using either form he was imposing upon the first and principal object of his love and bounty a *duty* to do something with the property, for the benefit of another, which the *law*—not the testator's purpose—would *compel* him to perform.

It is respectfully insisted that no argument can be presented as to the force of the words here used that would not apply as well in all the cases where the trust was sought to be established as to the property that was "*left*" at the death of the donee.    In these there was no express

power of disposal given to the donee, any more than here, but it was held that the words *"what shall be left"* necessarily imply that the first taker may use the property at his discretion, and for his own benefit, and it is therefore uncertain whether anything may be left at his death. *Tibbitts vs. Tibbitts,* 19 *Ves.,* 664 ; *Cowman vs. Harrison,* 17 *Eng. L. and Eq.,* 290 ; *Jarman on Wills, Vol. I,* 322.

Another element of uncertainty is presented by the inquiry, to whom would the natural increase of the property belong if the bequest to Mrs. Anderson is cut down to a life estate ?

In *Bland vs. Bland,* 2 *Cox's Ch. Cases,* 349, (decided in 1745,) the request was made as to " the said premises, or so much thereof as he shall stand seized of at the time of his decease." Lord HARDWICKE held, that the previous devise in fee imported a power in the donee to diminish the property. It was the same, said the Lord Chancellor, as if the testator had said, " I leave it to you to dispose of as you think fit, but I shall be glad if you will give as much as you can spare, so and so."

In *Attorney-General vs. Hall, Fitzgibbons,* 314, 321, there was a devise of real and personal estate to a son and the heirs of his body, and if he died without such heirs, then " so much of my said real and personal estate as my said son shall die *possessed of at his death,* to the Goldsmith's Company, in trust for charitable uses," &c. The Court held, " that the son took an absolute estate in the property, and that the Company was to have no more than he shall have left unspent, and therefore he had a power to dispose of the whole, which power was not expressly given to him, *but resulted from his interest,* and nothing remained to be given over."

This case was in 1735, and is referred to in *Bland vs. Bland,* and other cases.

In the cases in which trusts have been sustained, there will generally, if not always, be found something to indi-

cate, from the face of the will, how the rule *id certum est*, *&c.*, could be applied with certainty. For instance, in *Pierson vs. Garrett*, 2 *Bro. Ch.*, 38, *marg.*, the dying request related to " the fortune he shall receive under this my will " — that is, to the whole property, and that was after an absolute bequest defeasable on the donee dying without leaving issue. The only question was as to the binding force of the words upon the conscience of the donee. The Lord Chancellor held that the donee only took an estate for life.

*Frank H. Stockett* and *Alex. B. Hagner*, for the appellees.

Whatever interest or estate the will of Dr. Anderson created in favor of Brice T. B. Worthington had he survived Mrs. Eliza Anderson, descended to the appellees, his sole heirs-at-law upon his death, or vested in them under his will. *Spence vs. Robins*, 6 *G. & J.*, 507 ; *Code, Art.* 93, *sec.* 304 ; *Glenn, Adm'r vs. Belt*, 7 *G. & J.*, 362 ; *O'Byrne vs. O'Byrne, Adm'r*, 9 *Md.*, 512 ; *Waters, Ex'r vs. Waters, Trustee*, 24 *Md.*, 431 ; *Hays vs. Wright*, 43 *Md.*, 122.

The rule is, that if the legatee be capable of taking, no postponement of the time of the payment will prevent his having a vested and transmissible interest. *Cousins vs. Schroder*, 4 *Sim.*, 23 ; *Thomsons' Trusts*, 15 *Law and Eq. Rep.*, 498 ; *Hammond vs. Maule*, 1 *Cully*, 281.

The words used in the will are sufficiently clear and definite to create a trust, and are sufficiently imperative to demand its fulfillment.

In creating a trust, a person need only make his meaning clear as to the *interest* he intends to give, without regarding technical terms. *Lewin on Trusts*, 86, 104 ; *Hill on Trustees*, 73-74, (*marginal ;*) *Jarman on Wills*, 334, *et seq. ;* 2 *Story's Equity, secs.* 1068, 1068*a ;* 1 *Spence*, 498 ; *Id.*, 501 ; 1 *Redfield on Law of Wills*, 173, 174, 175, 699,

700, 703 *and notes ; Perry on Trusts, secs.* 112, 114, *note* 3, 115 ; *Forbes vs. Ball,* 3 *Mer.,* 437 ; *Hunter, Adm'r vs. Stembridge,* 12 *Ga.,* 192.

The correct principle is, that a trust is created in those cases only " where a testator points out the objects, the property, and the way it should go." *Smith's Manual of Equity,* 124 ; *Malim vs. Keighley,* 2 *Ves., Jr.,* 335 ; *Knight vs. Boughton,* 11 *Cl. & Fin.,* 548 ; *Pierson vs. Garrett,* 2 *Bro. Ch. Rep.,* 38 ; *Chase vs. Plummer,* 17 *Md.,* 166 ; *Saylor vs. Plaine,* 31 *Md.,* 158 ; *Eade vs. Eade,* 5 *Mad. Ch. Rep.,* 77 ; *Harrison vs. Harrison's Adm'x,* 1 ; *Horwood vs. West,* 1 *Sim. & Stu.,* 387 ; *Ford vs. Fowler,* 3 *Beavan,* 146 ; *Paul vs. Compton,* 8 *Vesey,* 380.

In the case now before the Court, the will is so clear and and expressive as to the objects and the way in which the testator's property should go, *i. e.,* the persons who are to take, that there can be no hesitancy as to either.

BARTOL, C. J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellees, claiming as devisees and legatees under the will of their late father, Brice T. B. Worthington, for the purpose of enforcing an alleged trust, in favor of their testator, under the will of Dr. Asa Anderson, deceased.

The appellants, respondents below, who claim as executor, devisees and legatees under the will of Mrs. Eliza Anderson, deceased, demurred to the bill, and have appealed from the decision of the Circuit Court overruling the demurrer. The question presented by the appeal is the construction of Dr. Anderson's will, which contains the following clause, relied on as creating the trust : " It is my will and desire, and I hereby devise and bequeath all my property real, personal and mixed, of what kind or nature soever, and wheresoever situated, to my dear wife Eliza Anderson, and her heirs and assigns forever, and it is my request and desire that my wife Eliza Anderson

should, by last will and testament, devise and bequeath all of the said property at her death remaining in her possession, to my friend Brice T. B. Worthington of Annapolis, and to Elizabeth Williams, daughter of Theodore Williams, of Prince George's County, to the said Brice T. B. Worthington and Elizabeth Williams, and their heirs and assigns forever, equally share and share alike."

With respect to the disposition of the property to be made by his wife, the testator does not use imperative language, but expresses his *wish* and *desire* merely.

It is not denied or questioned however, by the appellants, that precatory words such as these, may create a trust. They have been so construed in a great many decided cases which need not be particularly cited. These will be found collected in the elementary works. *Perry on Trusts*, sec. 112, *et seq.* ; *Lewin on Trusts*, 104, *et seq.* ; *Hill on Trustees*, 108, *&c.* ; and 2 *Story's Eq. J., secs.* 1068 *to* 1073.

"The effect of expressions of this nature in creating a trust depends entirely on the supposed intention of the donor (or testator) to be gathered from the tenor of the instrument." *Hill on Trustees*, 114.

In 17 *Md.*, 165, (*Negro Chase vs. Plummer*,) it was said, "It has been frequently decided both in England, and in this country, that words of recommendation, desire, hope and such like, will raise a trust to be executed by the persons to whom they are addressed. But such expressions are not always imperative ; they are flexible in character, and whether they are to prevail in a particular case is always a question of construction upon the whole will."

It is not easy to extract from the decided cases any very clear or well defined rule to govern us in the construction of the will under consideration ; that must necessarily depend upon its particular provisions, and the intention of the testator to be derived from its terms.

It may be laid down, however, as well settled upon all the authorities, that in order to justify the Court in con-

struing precatory words in a will as creating a trust, it must appear that the property which is the subject of the trust is definite and certain.

In this case the will gives Mrs. Anderson the absolute estate in fee, and then *requests and desires* that she should at her death devise *all the said property remaining in her possession* to B. T. B. Worthington and E. Williams.

The trust is sought to be established, not with respect to all the property devised by Dr. Anderson to his widow, not with respect to any specific part thereof described in the will, but with respect to so much thereof as might remain in her possession at her death. Now how can it be said that the subject of the supposed trust is certain and definite.

Having the absolute estate, Mrs. Anderson undoubtedly possessed the power of disposing of the property, according to her own discretion, unless by the terms of the will her discretion and power of disposition were fettered and controlled. If the precatory words had related to the whole of the property devised to her, there are many decided cases which hold that the words indicating the ultimate disposition which the testator desired her to make would charge the property with a trust in favor of the persons named, notwithstanding the gift to her was in fee. Such are the cases of *Mace vs. Mallorn*, 21 *L. J.* (*Ch.*,) 355 ; *Gully vs. Cregoe*, 24 *Beav.*, 185, and *Shovelton vs. Shovelton*, 32 *Beav.*, 143, cited by the appellees, and other cases might be referred to, to the same effect.

But in this case, it appears to us, the power of disposition by Mrs. Anderson, implied in the absolute gift of the property to her, cannot be said to be limited or controlled by the subsequent words, which have reference only to such property as might remain in her possession at the time of her death.

" Where there is a right in a donee to spend the subject of the gift, that is inconsistent with the nature of such

a precatory trust to bequeath it over to any other person."
*Cowman vs. Harrison,* 17 *L. & Eq. R.,* 290.

In construing wills containing precatory words, a distinction has been drawn between cases where the gift to the first devisee is for life only, and those in which the gift is absolute, with superadded words.   *Howarth vs. Dewell,* 6 *Jur.* (*N. S.,*) 1360.

We have found no well considered case in which a trust of this kind has been supported, where the gift to the first devisee was absolute in its terms, followed by precatory words, indicating the disposition to be made of *what might be left,* or *what might remain of the property,* at the death of the first devisee.

In such case the attempt to establish the trust has failed, *first,* for the reason that such expressions in the will can properly be construed only as conferring on the *first* devisee unlimited discretion and power of disposition, and *secondly,* because in such case the subject of the supposed trust is altogether indefinite and uncertain.

Many cases are cited in *Lewin on Trusts,* 108.   We refer to some of them that appear to be analogous to the present.

In *Bland vs. Bland,* 2 *Cox's Ch. Cases,* 349, (decided in 1745,) the devise was in fee, with the request " as to the said premises, or so much thereof as he (the devisee) shall stand seized of at the time of his death."

Lord HARDWICK decided that the previous devise in fee imported a power in the devisee to diminish the property.

He said, "It was the same as if the testator had said I leave it to you to dispose of it as you think fit, but I will be glad if you will give so much as you can spare, so and so."

In *Wynne vs. Hawkins,* 1 *Bro. Ch. R.,* 179m, (decided in 1782,) the will after leaving certain legacies, proceeded as follows : " And as I shall leave behind me, over and above the said legacies, only sufficient for a decent maintenance

for my loving wife, Mary Wynne, by whose prudence and economy I have saved the greatest part of the fortune I shall die possessed of, not doubting but that she will dispose of what shall be left at her death to our two grand-children ; all the rest and residue of my personal estate, goods, chattels, moneys in the stocks, plate, jewels, watches and household furniture, and whatever else I shall be possessed of at the time of my decease, I give and bequeath to my loving wife Mary, hereby constituting and appointing her sole executrix." A bill was filed by a surviving grand-child against the representatives of the wife, to enforce the supposed trust under the will. But the trust was not supported.

The Lord CHANCELLOR said in delivering his judgment, "If the intention is clear what was to be given, and to whom, I should think the words '*not doubting*' would be strong enough. But where in point of context it is uncertain what property was to be given, and to whom, the words are not sufficient, because it is doubtful what is the confidence which the testator has reposed, and where that does not appear the scale leans to the presumption that he meant to give the whole to the first taker."

In *Pushman us. Filliter*, 3 *Ves.*, 7, the testator gave the residue, &c. of personal estate to his wife, "desiring her to provide for my daughter Anne out of the same, as long as she my said wife shall live, and at her decease, to dispose of what shall be left among my children, in such manner as she shall judge most proper." On a bill being filed by the children against the executor of the wife, it was decided that no trust was created by the will in their favor ; that it was an absolute gift of the property to the wife, to be disposed of to any use she might think fit, subject only to a trust in favor of the testator's daughter Anne.

In *Wilson vs. Major*, 11 *Ves.*, 204, there was an absolute gift to the wife, "upon full trust and confidence

that she would make proper distribution of what effects may be left in money, goods or otherwise, to his (testator's) children." It was held that the wife took the absolute estate, unfettered by a trust. This case was decided by Sir WM. GRANT, M. R. in 1805.

We refer also to *Cowman vs. Harrison,* 17 *L. & E. R.,* 290, before cited, and the language of Lord ELDON in *Tibbets vs. Tibbets,* 19 *Ves.,* 655.

These decisions rest upon the distinct proposition that where the gift to the devisee is absolute, precatory words, with regard to what is left at the death of the devisee, will not create a trust, because the property to which they refer, as the subject of the trust, is not certain and definite. Here the precatory words apply to the property that may remain in Mrs. Anderson's possession at the time of her death ; which in our judgment is an equivalent expression, and means the same, as if the will had used the words, " the property that may be left."

In support of the position that this is not such an uncertainty as defeats the trust, the counsel for the appellees rely upon the expression of Sir JOHN LEACH, *V. C.,* in *Eade vs. Eade,* 5 *Mad. Ch. R.,* 118. There the precatory words were construed to refer to the remainder of the wife's property. The Vice Chancellor said, " if the testator had requested his wife at her death to leave the remainder of his property to *G. and W. E.,* there would have been a clear trust in their favor because the remainder of testator's property could have been ascertained." By reference to the will then under consideration it will be seen that if the expression, " the remainder of his property " had been used, the whole property of the testator would have been subject to the trust, after deducting therefrom £200, named in the will. That the expression of the Vice Chancellor is not susceptible of the construction put upon it by the appellees' counsel we think is evident, not only from the case itself, but also from the decision of the same Vice

Chancellor, rendered three years afterwards in *Harwood vs. West*, 1 *Sim. & Stuart*, 387. In that case he held that the words "*what she should die possessed of under his will,*" were too uncertain ; but construing the other parts of the will, he said, "it was clear that the testator had in his view the whole property she should possess under his will, and that the expression was equivalent to a recommendation to give the whole property."

We do not think that the clause in the will manumitting such of the testator's negroes, in the possession of his wife at the time of her death, as shall prefer to go to Liberia, in any respect changes the construction of the other provisions of the will, or furnishes any support to the trust claimed by the appellees with respect to the other property.

It is evident from the face of the will, that the testator fully understood the difference between positive and peremptory language, and mere precatory words. Accordingly in conferring manumission upon the negroes, he used the plain and positive terms "*and I hereby manumit such negroes for that purpose.*"

The effect of this provision was to qualify the antecedent gift to the wife, and to give her a mere life estate in the negro slaves, without the power of selling, or disposing of them. But with respect to the other property, according to our construction of the will, the testator intended to give the same to his wife absolutely, leaving the execution of his request entirely to her discretion. In construing provisions of this kind in a will, we agree with what was said by the Lord CHANCELLOR in *Wynne vs. Hawkins* before cited, "That it being doubtful what is the confidence which the testator has reposed, the scale leans to the presumption that he meant to give the whole to the first taker." We quote what has been said by Judge STORY as quite applicable here. "It will be agreed on all sides, that where the intention of the testator is to leave the whole subject, as a

pure matter of discretion, to the good will and pleasure of the party enjoying his confidence and favor, and where his expressions of desire are intended as mere moral suggestions, to excite and aid that discretion, but not absolutely to control it, there the language cannot and ought not to be held to create a trust.   Now words of recommendation, and other words precatory in their nature, imply that very discretion, as contradistinguished from peremptory orders, and therefore ought to be so construed, unless a different sense is irresistibly forced upon them by the context. *Meredith vs. Heneage,* 1 *Sim.,* 542.   Accordingly in more modern times a strong disposition has been indicated not to extend this doctrine of recommendatory trusts, but as far as the authorities will allow, to give to the words of wills their natural and ordinary sense, unless it is clear that they were designed to be used in a peremptory sense." 2 *Story's Eq. J.,* sec. 1069.

Being of opinion that Mrs. Anderson was entitled to the absolute estate in all the property devised to her by her husband, (except the negro slaves,) and that she had the power to devise the same at her death according to her own judgment and discretion, the decree of the Circuit Court will be reversed, and the bill dismissed.

*Decree reversed, and*
*bill dismissed.*