# STEPHEN E. NUNN vs. WILLIAM J. O'BRIEN, TRUSTEE.

*Precatory Trust—Absolute Gift Followed by Expression of a Wish as to Disposition of what Remains of the Property—Devise and Legacy.*

Where a devise of property imports absolute ownership by the devisee and is followed by words expressing the testator's wish as to the disposition of what might remain of the property at the death of the devisee, no valid precatory trust is thereby created.

A testatrix devised the residue of her property to her husband "absosolutely," and then expressed her "wish that my dear husband shall arrange his affairs that, at his death, whatever may remain of said residue shall go to my son," &c. *Held,* that the husband did not have merely a life estate in the property, but could convey the same absolutely.

Appeal from a *pro forma* order of Circuit Court No. 2, of Baltimore City, overruling exceptions filed to the ratification of a trustee's sale.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*James B. Guyton,* for the appellant, submitted the case in his brief.

*William J. O'Brien, Jr.,* for the appellee.

RUSSUM, J., delivered the opinion of the Court.

The question presented by the appeal in this case is the construction of the will of Mrs. Sue B. Cary, who died in Baltimore City, February 20th, 1887, which contains the following clause : "All the rest, residue and remainder of my property and estate, of every kind whatsoever, I give, devise and bequeath to my dear husband, Charles J. Cary, absolutely, and this I do because of the love I bear him and

the confidence I have in his judgment, discretion and honor, and I do entrust my dear child to his care and guardianship, knowing his loving tenderness and sound judgment will insure the well-being of my child, so far as lies in his father's power ; and it is my wish that my dear husband shall so arrange his affairs that, at his death, whatever may remain of the said rest, residue and remainder of my estate, shall go to my son, if he be then living, or if he be not living, to his issue, if any such there be, share and share alike, or if neither my son, nor any of his issue, survive my husband, then to such of my relatives as my husband may appoint."

Charles J. Cary, the husband of the testatrix, conveyed the property thus devised to him to William J. O'Brien, in trust for the benefit of his creditors, who, under an order of the Circuit Court No. 2, of Baltimore City, sold the same to Stephen E. Nunn. A few days thereafter Nunn filed objections to the ratification of the sale, alleging that although an absolute leasehold estate in the lot of ground at the corner of McCulloh and Dolphin streets was advertised and sold by the trustee, yet the said trustee had only an estate in said property during the life of Charles J. Cary, " inasmuch as by the will of Sue B. Cary the said property was bequeathed to the said Charles J. Cary for life only, with remainder over to other persons." A *pro forma* order was passed overruling the objections and ratifying the sale, from which the purchaser appealed to this Court. There was no claim, in the argument, that the devise over of what might remain was good, either as a remainder or as an executory devise, and the only question submitted for our consideration is whether the above recited clause created a precatory trust in favor of the son of Mrs. Cary, if living at the death of Charles J. Cary, and, if he be not then living, in favor of such issue as he might have living at the time of his death.

The doctrine of the creation of trusts by words of recommendation, desire and the like has been distinctly recognized in the decisions of this Court. Briefly stated, the

rules laid down for the construction of wills containing such words are :   (*a.*). The primary and cardinal rule is, that the intention of the testator, if it be consistent with the rules of law, is to govern, and this must be gathered from the whole will.   (*b.*) That words of entreaty, recommendation or wish, addressed by a testator to a devisee or legatee, will make him a trustee for the person or persons in whose favor such expressions are used, provided the testator has pointed out, with clearness and certainty, the objects of the trust, and the subject-matter on which it is to attach, or from which it is to arise and be administered.   (*c.*) Wherever a clear discretion or choice to act, or not to act is given, wherever the prior disposition of the property imports absolute and uncontrollable ownership, in all such cases Courts of Equity will not create a trust from words of this character.   See *Negroes Chase et al.* v. *Plummer,* 17 Md. 165 ; *Williams Exr. et al.* v. *Worthington et al.,* 49 Md. 572 ; *Handley et al.* v. *Wrightson et al.,* 60 Md. 198 ; *Maught Exr.* v. *Getzendanner et al.,* 65 Md. 528 ; *McClernan et al.* v. *McClernan,* 73 Md. 284.   Guided by the cases from which these rules are deduced, we now proceed to consider whether looking to the whole will the testatrix intended to create a trust, and, if she did, whether the words employed by her are sufficient to create one, as contended for by the appellant. Did she clearly understand the difference between an imperative direction and the expression of a mere wish, indicating what she thought would be a reasonable disposition of his property by her husband, at his death ?   In each of the two clauses preceding the one under consideration she created a trust.   In each, the subject and object of the trust is defined with clearness and certainty, and the manner of its administration and its duration are set out with precision.   In one of them she bequeaths to her husband, Charles J. Cary, the sum of ten thousand dollars, in trust for her son, Charles Reed Cary.   In the other she bequeaths to her husband, Charles J. Cary, five thousand dollars, in trust for her brother-in-law, Edward Cary.   In

both instances the interest is to accumulate until the *cestuis que trust* shall respectively attain the age of twenty-one years, at which time the whole fund is to be paid over.. But, if either of the *cestuis que trust* " should not live to attain the age of twenty-one years, then, at his death, the trust for his benefit shall cease, and the trust funds shall vest in and become a part of the rest, residue and remainder " of her estate, thereinafter disposed of. In the clause under consideration, after bequeathing all the rest, residue and remainder of her estate to her husband, Charles J. Cary, " *absolutely*," she adds these words : " It is my *wish* that my dear husband shall so arrange *his* affairs, that, at his death, *whatever may remain* of the said rest, residue and remainder of my estate shall go to my son, if he be then living, or if he be not living, to his issue, if any such there be," &c. Now, when it is considered that she was addressing her words, in each of these clauses, to her husband, the difference between the language used in the clause under consideration, and that used in the clauses creating the trusts in favor of her son and her brother-in-law, leads us to the conclusion that she fully understood the meaning of the words used in each, and that the " wish " expressed in relation to the " whatever may remain of the rest, residue and remainder " of her estate at the death of her husband, was merely a word of solicitation, and not intended to control his discretion in the disposition of the property. Again, the bequest to Charles J. Cary of the rest, residue and remainder of her estate, is not " for life only," as contended by the appellant, but *absolute*, and the power to dispose of it as he pleased is one of the legal incidents of the property, not limited or controlled by the subsequently expressed wish referring to such part of it as might remain in his possession at the time of his death. And, besides, the subject of the supposed trust is too indefinite and uncertain. " Whatever may remain " means simply all that Charles J. Cary had not spent, or otherwise disposed of, was to go to her son, the nature and extent of the property being altogether uncertain.

In *Worthington's case*, 49 Md. 581, after referring to the distinction between cases where the gift to the first devisee. is for life only, and those in which the gift is absolute, followed by precatory words, this Court said : " We have found no well considered case in which a trust of this kind has. been supported, where the gift to the first devisee was absolute in its terms, followed by precatory words, indicating· the disposition to be made of *what might be left, or, what might remain of the property*, at the death of the first devisee. In such cases the attempt to establish the trust has failed, *first*, for the reason that such expressions in the will can properly be construed only as conferring on the first devisee unlimited discretion and power of disposition ; and, *secondly*, because in such case the subject of the supposed. trust· is altogether indefinite and uncertain." In that case, the devise was to " A and her heirs and assigns forever," followed by the words, " it is my request and desire that my dear wife should bequeath all· of my property, at her death, remaining· in her possession," to the testator's friend, B. W. It. was held that A· took the absolute estate and had the power to dispose of the property as she pleased. In this case the expression is " it is my *wish*," which is much less imperative in meaning than " request and desire," and is not sufficiently imperative to control Charles J. Cary in the disposition of the property.

It follows, therefore, that the *pro forma* order, dismissing. the exceptions of the appellant, and ratifying the sale, must be affirmed.