# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed August 3, 1898.

THE TRUSTEES OF THE SHEPPARD AND ENOCH PRATT HOSPITAL

VS.

JAMES A. GRAY AND ARNOLD S. HYDE, EXECUTORS OF ENOCH PRATT, ETC.

*William Pinkney Whyte* and *Willis & Homer* for Trustees of the Sheppard and Enoch Pratt Hospital.

*W. Irvine Cross, E. J. D. Cross* and *Abner McKinley* for Mr. Pratt's heirs.

*Barton & Wilmer* for Mr. Pratt's executors.

SHARP, J.—

Four cases were argued together. The main question is the same in all of them, and arises out of the will of the late Enoch Pratt. After making various bequests, Mr. Pratt disposes of the residue of his estate in the twelfth clause of his will, which is as follows:

"Twelfth. Having in my life time liberally provided for my niece and nephew hereunder named, I do now hereby give, devise and bequeath all the rest and residue and remainder of my estate of every kind and description, whether real, personal or mixed, and wherever the same may be situate, of which I may die possessed, or be in any way entitled to at the time of my death, after the payment of all debts justly due by me and after satisfying all the devises and bequests hereinbefore set forth to the 'Trustees of the Sheppard Asylum,' a corporation already incorporated by the General Assembly of the State of Maryland by said name, style and title, and its successors forever; it being my intention and meaning to make said corporation, the 'Trustees of the Sheppard Asylum' the residuary legatee and devisee of and under this my last will and testament. And I direct my executors to set over, transfer and convey by proper deeds, assignments and transfers the said residue of my estate to the said corporation upon and subject however to the following condition and bargain, namely, that the said trustees shall adopt as the name and style of said corporation, the title of the 'Trustees of the Sheppard and Enoch Pratt Hospital' and shall obtain at the first session of the General Assembly of Maryland after my death an amendment to their charter authorizing the said change of title and adopting the said name of the 'Trustees of the Sheppard and Enoch Pratt Hospital' as the future title of said corporation.

While I do not wish to alter the operations and management, or the working of the said Asylum, as now existing and being carried on, it is my wish and will that the income, from

my said residuary estate, shall be used to complete the present buildings and grounds and for the erection of such other buildings or building as will accommodate not less than two hundred additional inmates, and after that, the income from my aforegoing donation shall be devoted mainly to the care of the indigent insane in the most advisable manner, at *very low charges*, or absolutely *free*, as the trustees of said corporation, in the exercise of their best judgment as to the rate to be charged, may deem best and wisest to promote the object of this donation. Provided, however, and it is expressly my will that in case the said Trustees of the Sheppard Asylum fail to obtain from the General Assembly of Maryland, at its first session after my death, the amendment to the charter of said institution hereinbefore stipulated, and provided for, and fail to adopt the name for said corporation of the "Trustees of the Sheppard and Enoch Pratt Hospital," then and in that case it is my will and I then give, devise and bequeath (in lieu of the aforegoing provision) the said residue of my estate to my niece, Ellen I. O. Phinney, and to my nephews, Gerard C. Tobey, Horace Tobey, I. Lowell Pratt, David G. Pratt, Edmund T. Pratt and Mortland L. Pratt, to be in that case set apart for and equally divided among them and the issue per stirpes, of any of them who may be dead at the time of my decease, such issue to take the share to which its or their parent would if living have been entitled.

I direct my executors, until it shall have been decided as above provided, whether the said condition of my aforegoing devise and bequest of said residue will be performed—that is to say, whether the said corporation will obtain authority as aforesaid, to change its title, and will, in fact, adopt the title above designated, to keep all buildings and improvements on my property insured and in good order and condition, and pay all charges and taxes thereon, and collect the rents and income on said residue of my estate, and to invest the said net income in Baltimore City Stock, the same to be added to, and constitute a part of, the said residuary estate."

At the last session of the Legislature an Act was passed changing the name of the institution referred to, from "The Trustees of the Sheppard Asy-

760

lum" to "Trustees of the Sheppard and Enoch Pratt Hospital." (Laws of 1898, Chap. 17.) This corporation now claims the residue of Mr. Pratt's estate, pursuant to the terms of his will, the "condition and bargain" on which the bequest was given having been complied with.

But the right of this institution is contested by Ellen I. O. Phinney and the other alternative legatees mentioned in clause twelve of Mr. Pratt's will, and by his heirs and next of kin. The grounds of their contention are as follows:

I. That the Act of the Legislature of Maryland changing the name of the corporation is invalid: (1) Because it impairs the obligation of a contract and is in violation of Article 1 of Section 10 of the Constitution of the United States. (2) Because the Act is contrary to Article 3 of Section 29 of the Constitution of Maryland, which provides that every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title. (3) That the Trustees of the Sheppard Asylum in consenting to the passage of the Act and to the change of name exceeded their powers and that their action was illegal and void.

It is claimed that, the Act being void and a nullity, the "conditions and bargain" has not been complied with, and the bequest passes under the terms of the will to the alternative legatees.

II. It is further contended that, whether the Act be valid or not, the bequest to the Asylum is void, because it attempts to create a trust in favor of "the indigent insane," which is void for uncertainty. It is claimed: (1) That the testator in paragraph 2 of clause 12 in providing that it was his "wish and will" that the income "shall be used" to complete the buildings, etc., and "shall be devoted" to the care of the indigent insane, created a trust. (2) That the bequest to the corporation being for a special purpose and not for the general purposes of the corporation, a trust was created.

III. That the bequest in favor of the indigent insane being to take effect after the completion of the present buildings and grounds and the completion of other buildings was a perpetuity.

It is claimed a trust and perpetuity having been created, either that the alternative legatees are entitled under the will or an intestacy has occurred as to the residuum of Mr. Pratt's estate, which consequently passed to his next of kin and heirs-at-law.

The first contention of the next of kin is that the Act of 1898, Chap. 17, changing the name of the Sheppard Asylum, is void.

This claim is expressed in the brief as follows: "The charter of the Sheppard Asylum was granted in 1853, and upon the faith of that charter Sheppard gave and devised to the corporation thus formed and bearing his name the bulk of his property amounting to about $1,000,000." "There was an implied contract between Sheppard, the corporation and the State that his bounty should be administered according to his intents and purposes and for the objects stipulated in the charter. The name of the corporation was a part of its franchises and was inviolable." "Legislatures have no power to change the form of trust property contrary to the expressed intent of the donor, nor can they direct or sanction a scheme for the administration of the trust different from that prescribed by the donor." "In applying the above principles to our case there can be no doubt that when the Legislature of Maryland granted the charter to the Sheppard Asylum, the scheme then formulated by the donor and founder contemplated the administration of the trust under the name then given it and under no other name. This was the express intent of the founder, and it certainly is not within the power of the General Assembly to alter or change the course of administration in this respect."

This claim is founded on an erroneous view of the facts. The Act of 1898 makes no changes in the trust; the objects for which the institution was incorporated are not changed. The single purpose of the Act is to change the name.

Mr. Sheppard's gift to the institution was not on the express condition that his name should be associated with the charity. The language of his will admits of no such construction. The gift to the corporation is absolute and without any conditions. It was a gift to the corporation to be used for the purposes of the institution, which are de-

clared in Sec. 2 of the charter to be as follows: "The object and design of said corporation is hereby declared to be the founding and maintaining of an asylum for the insane, the entire management of which shall be vested in said trustees."

There are no conditions of any sort. Mr. Sheppard's intention, as indicated by his will, is to give the residue of his estate to any asylum for the insane. Nothing more can be found in his will.

It is, of course, possible for a testator to annex to a gift the condition that his name shall be forever associated with it.

The charter of a corporation containing such a condition would present entirely different questions from those arising in this case. Here, there is no such express condition, and such a condition is not implied.

It follows from this that Mr. Sheppard and his representatives may be left out of consideration as parties to the contract created by the charter. The charter was a contract between the State and the corporation.

The Act of 1853, Chap. 274, incorporating the Sheppard Asylum, provided, by Section 9, "That this Act shall continue in force until repealed by the General Assembly, and the General Assembly may, at any time, alter or amend this Act." The right of the Legislature to repeal, alter or amend the Act being reserved in the Act, this right was a condition of the contract.

Sprigg vs. Western Telegraph Co., 46 Md. 67.

American Coal Co. vs. Consolidated Coal Co., 46 Md. 15.

Shaeffer vs. Union Mining Co., 55 Md. 79.

Tomlinson vs. Jessup, 16 Wall. 457.

In view of the emphasis put on Mr. Sheppard's supposed intention, it may be remarked that he was an incorporator and one of the trustees mentioned in the Act. He, therefore, was fully cognizant of, and assented to, the power to repeal or amend the charter.

But, it is contended, the power to amend does not extend to the name.

As stated in the brief of the alternative legatees this claim is: "Notwithstanding the reservation of the power to amend, it is clear that any amendment to be valid must be in line with the intents and wishes of the founder, and any amendment antagonistic to his wishes and which in effect obliterates his connection with the charity is beyond the power of the Legislature to make."

The Act of 1898 creates no new corporation; it deprives the Sheppard Asylum of no property; it adds no new powers, nor does it deprive the corporation of any it before possessed. It affects none of the rights or obligations of the corporation nor does it remove Mr. Sheppard's name from the title of the institution. Its sole purpose is to change the name by adding Mr. Pratt's name to Mr. Sheppard's.

Thompson on Corporations, S. 289.

Boone on Corporations, S. 47, S. 31, S. 271.

In this respect the Act differs from the statutes which were the subject of controversy in all the cases cited by the next of kin. In all of them the statutes attempted to change the title to property.

It has been already shown that Mr. Sheppard's gift was without condition, so that the question to be determined is the simple question whether the name of a corporation may be changed by the Legislature when the power of repeal or amendment is reserved in the charter?

It can hardly be doubted that generally the Legislature has the power to change the name of a corporation. Presbyterian Church vs. Bloomfield, 111 Pa. St. 156. The cases in which this has been done are too numerous to mention. At every session of the Legislatures laws are passed changing the names of corporations.

But it is contended that this cannot be done without the consent of the corporation. It is argued that "the name of this corporation was a part of its franchises and was inviolable." The trustees of the Asylum having accepted the Act of 1898 and assented to the change of name, it is further contended such action was in excess of their powers and void.

The same erroneous view of the facts appears in this contention. There was no condition in the charter or will of Mr. Sheppard that the name should not be changed.

The power of the trustees is not limited in the way suggested. Their powers

762

will be found in the charter. The Act of 1853, Chapter 274, provides in Section 2, "that the entire management of. the corporation shall be vested in said trustees." The entire management of the corporation being vested by the charter in the trustees their will is the corporate will. They have by the usual procedure accepted the Act changing the name, and this was within their powers. The parties to the contract having consented to its modification in this way its obligation has not been impaired.

Jackson vs. Walsh, 75 Md. 306.

It would, moreover, be a sufficient answer to the contention that the law impairs the obligation of a contract to say that the alternative legatees and next of kin of Mr. Pratt are not parties to the contract or in any way interested in its performance. The provision of the Constitution referred to was never intended to permit persons who were not parties to a contract to insist on its inviolablity. Nor can they complain of the action of the trustees. They are not beneficiaries, nor do they represent Mr. Sheppard. Ordinarily, the State alone'can interfere in such cases; but in some cases citizens of a State were permitted to intervene in cases where bequests for public purposes were in question. If such action were proper in this case the alternative legatees cannot intervene because they are not citizens of the State. Their action is not for the purpose of enforcing the trust, but is purely selfish.

The last objection to the validity of the Act is that it is contrary to Article 3, Section 29, of the Constitution of Maryland which provides that "every law enacted by the General Assembly shall contain but one subject, and that shall be expressed in its title." The Act of 1898, Chapter 17, is entitled "An Act to change the name of the Trustees of the Sheppard Asylum," etc. The Act contains a preamble with several recitals of fact. In Section 1, after enacting that the name shall be changed, the Act contains a clause which is the foundation of. the claim under its new name shall have, hold and enjoy all the powers and functions which were heretofore possessed by or conferred on said corporation under and by its former name of 'The Trustees of the Sheppard Asylum,' and shall hold in like manner all property or estate which

it shall acquire by will or otherwise under the said change of title hereby made."

This .clause is merely declaratory. It confers no new powers on the corporation. It might be stricken out of the Act and the corporation would still possess the powers mentioned. It is matter foreign and irrelevant to the purpose of the Act, and its introduction does not make the law invalid."

M. & C. C. of Balto. vs. Reitz, 50 Md. 574.

But if the clause could be considered of any legislative force and void, because not indicated in the title of the act, it may be stricken out and the remainder of the Act, which provides for changing the name, will be valid.

Stiefel vs. Md. Inc. Co., 61 Md. 144.

For these reasons, it must be held that the Act is valid, and that the "condition and bargain" on which Mr. Pratt devised the residue of the estate to the corporation has been complied with.

But it is next contended that though the change of name be valid and the corporation entitled, it takes no beneficial interest, but holds as trustee for the indigent insane.

In one sense every bequest to a charitable corporation is a trust. The gift must be devoted to the purposes for which the corporation is created and the Court will enforce this duty. An absolute gift to a corporation, the object of whose incorporation was the founding and maintaining of an asylum for the insane, would be valid, notwithstanding the indefinite description of those intended to be benefitted.

Ould vs. Washington Hospital, 95 U. S. 313.

But it is not in this sense that the word "trust" is here used. The heirs and next of kin contend that a naked trust was created by Mr. Pratt's will; that the corporation took no beneficial interest in the gift, but held as trustee for "the indigent insane."

A gift to trustees in trust for "the indigent insane" is undoubtedly void. In order to create a valid trust, the beneficiaries must be certain. Unless the persons to be benefitted are known, it is obvious the trust could not be carried out by the trustee or enforced by the Court. Trusts in favor of an indefinite class, such as "the real dis-

tressed poor of Talbot County," or "indigent and necessitous poor persons," or "the necessitous Methodist Church of the United States," "the poor children belonging to the Congregation of St. Peter's P. E. Church," "the poor children of Caroline County who attend the poor or charity school at Hillsborough" have been held too indefinite to be enforced. When it appears that a testator intended that the donee should not take for his own benefit, but for the benefit of others who cannot be ascertained, the bequest fails, and the property given passes to the heirs, next of kin or residuary legatees, as the case may be. Neither the benevolent intentions of the testator, nor the usefulness of the supposed object of his bequest, will suffice to uphold the gift if the persons to be benefitted cannot be ascertained.

If, therefore, a trust in favor of "the indigent insane" has been created by Mr. Pratt's will, it must fail and the property bequeathed pass to his next of kin. The rule is well settled. The authorities are numerous and discussion on this point would be idle. But the question arising under Mr. Pratt's will is not whether a trust is valid, but whether one has been created. The issue is trust vel non.

The first contention on this branch of the case is that the testator in providing that it was his "wish and will" that the income "shall be used" in a certain way, and that the income "shall be devoted" to the care of "the indigent insane," created a trust. These words are relied on to create the trust; there is no other evidence in favor of a trust.

It is frequently difficult to determine when a testator has added to a gift words of confidence, belief, desire, request or hope, whether his meaning is to devote the gift to the purpose indicated and to exclude the donee from all beneficial interest, or whether the words are intended to explain the motives of the testator in making the gift, or to suggest to the donee a reasonable or proper use to be made of it. If it appears that the testator intended to exclude the donee from all beneficial interest and to require him to devote the gift to the purpose indicated, a trust is created which the Court will enforce. The donee holds only the legal title. But if the intention is not to exclude the donee from a beneficial interest, but merely to advise him as to the use of the gift, no trust is created but the property is the donee's, to enjoy as he pleases.

Precatory words do not always create a trust. The question in every case is one of intention. Expressions *per se* sufficient to create a trust may be deprived of that effect by a context especially declaring or by implication showing no trust was intended. The question in all cases is, was the direction imperative? "The real question to be determined when such words are used is whether the confidence, hope or wish expressed is meant to govern the donee, or whether it was a mere indication of that which the testator thinks would be a reasonable or suitable use of the property conveyed, leaving the matter ultimately to the decision of the donee." 1 Jarman, S. 85, 406, n. 2.

A distinction is made by the heirs at law and next of kin of Mr. Pratt between words expressive of hope, desire and expectation and words expressing will, and much stress was laid on the words "will" and "shall." There is no mystery in particular words, the question in every case is one of intention and words of the strongest import must yield to more convincing evidence of intention.

Precatory words are *prima facie* imperative, and create a trust.

Nunn vs. O'Brian, 83 Md. 200.

Negro Chase vs. Plummer, 17 Md. 165.

Williams vs. Worthington, 49 Md. 572.

Handley vs. Wrightson, 71 Md. 108.

Maught, Ex., vs. Getzendanner, 65 Md. 532.

Colton vs. Colton, 127 U. S. 300.

"Difficulties of this nature, which are inherent in the subject-matter, can always be readily overcome, by bearing in mind and rigidly applying in all such cases the test, that to create a trust, it must clearly appear that the testator intended to govern and control the conduct of the party to whom the language was addressed, and did not design it as an expression or indication of that which the testator thought would be a reasonable exercise of a discretion which he intended to repose in the legatee or devisee. If the objects of the supposed trust are certain and definite; if the property to which it is to attach is clearly pointed out; if the relations

and situation of the testator and the supposed cestui que trust are such as to indicate a strong interest on the part of the testator in making them partakers of his bounty; and, above all, if the recommendation, or precatory clause, is so expressed as to warrant the inference that it was designed to be peremptory on the donee, the first and reasonable interpretation is that a trust is created, which is obligatory, and can be enforced in equity as against the trustee by those in whose behalf the beneficial use of the gift was intended."

Handley vs. Wrightson, 60 Md. 204.

See also, Negro Cross vs. Plummer, 17 Md. 165.

Williams vs. Worthington, 49 Md. 579.

Maught vs. Getzendanner, 65 Md. 528.

The words relied on in this case are sufficient to create a trust, but, it is contended for the Sheppard Asylum, that the force of these words is overcome by other words in the will.

It is contended, as a rule of construction, that when the language of the gift imports an absolute estate in the donee, subsequent precatory words will not create a trust. Free and unlimited powers of disposition by the donee are inconsistent with any binding obligation. This rule is well established and the authorities are numerous.

Williams vs. Worthington, 48 Md. 572.

Howard vs. Carusi, 109 U. S. 730.

Nunn vs. O'Brian, 83 Md. 200.

In Hutchinson vs. Tenant, 8 L. R., Chapter 540, Jessel M. R., discussed the rule and followed Lambe vs. Eames, L. R. 6, Chapter 597, refusing to follow cases to the contrary which he cites. See also

Irvine vs. Sullivan, 8 L. R. Eq. 673.

Webb vs. Wooles, 2 Sim. 267.

Parnell vs. Parnell, 9 Ch. D. 96.

White vs. Briggs, 15 Sim. 33.

Sale vs. Moore, 1 Sim. 534.

Johnson vs. Rowland, 1 De G. & S. 356.

Winch vs. Brutton, 14 Sim. 378.

Bardwell vs. Bardwell, 9 Sim. 358.

Fox vs. Fox, 27 Beav. 301.

Green vs. Maindell, 1 Drewry 646.

McCulloh vs. McCulloh, 11 W. R. 504.

Mackett vs. Mackett, 14 L. R. Eq. 69.

Van Gorder vs. Smith, 99 Ind. 405.

Hopkins vs. Steuart, 111 Pa. 287.

It is argued that mere words of limitation do not suffice to rebut the presumption of trust. A bequest to one, and his heirs and assigns, would create the greatest estate known to the law, a fee simple, and yet this would be entirely consistent with a trust; that words of limitation in the gift refer only to the legal estate and would not rebut the presumption of a trust created by the precatory words, and that the words contemplated by the rule are words indicating that the donee was to take beneficially.

In a number of cases cited mere words of limitation were held sufficient to overcome the force of the precatory words. But if this rule requires that the words in the gift should impart a beneficial interest in the donee, such words are not wanting in Mr. Pratt's will.

In paragraph 1 of clause 12, the testator says: "I do now hereby give, devise and bequeath all the rest, residue and remainder of my estate, of every kind and description, whether real, personal or mixed, and wherever the same may be situated, of which I may die possessed or be in any way entitled to at the time of my death, after the payment of all debts justly due by me, and after satisfying all the devises and bequests hereinbefore set forth, to the 'Trustees of the Sheppard Asylum,' a corporation already incorported by the General Assembly of the State of Maryland by said style and title, and its successors forever."

These words, it may be claimed, though giving the property fully by provisions unusually elaborate, are still consistent with a trust, as they may refer only to the legal estate.

Assuming, for the purpose of discussion, that this is true, the subsequent words are of a different character. He says: "It being my intention to make said corporation the 'Trustees of the Sheppard Asylum' the residuary legatee and devisee of and under this my last will and testament." These words mean that the donee is to take beneficially.

Another rule of construction is, that where the purpose of the gift is for the benefit of the donee himself, and not for others, the words will not be per-

emptory and no trust will be created. The donee may claim the gift without devoting it to the purpose indicated. Illustrations of this rule will be found in 1 Jarman on Wills, 397.

The Sheppard Asylum was incorporated as an asylum for the insane. Buildings and grounds are essential, and one of the purposes of the institution is the care of the indigent insane. The gift must be considered to be for the benefit of the donee, and the words in dispute to refer only to Mr. Pratt's opinion as to a proper use of the gift.

This is confirmed by other provisions of the will. In paragraph 1 of clause 12 the testator disposes finally of the principal of his estate. It is given to the Sheppard Asylum in most positive and comprehensive terms, subject to the condition and bargain that the name be changed. There is no other condition referred to. No evidence of a trust could be discovered by the most fertile imagination in the testator's words disposing of the principal.

In paragraph two the words in dispute are found. The testator is dealing entirely with the income. The principal he has given unreservedly to the Asylum in paragraph one. In paragraph two he speaks of the income of "my aforegoing donation," thus referring to paragraph one as operating to convey the gift.

He introduces the clause in dispute by saying he does not wish to alter the operations or management or workings of said Asylum. He leaves almost everything to the discretion of the trustees. The income is not to be wholly but "mainly" used in the way indicated; the trustees are to determine whether patients shall pay or be treated free, and, if required to pay, how much they must pay; the only thing which appears to be obligatory is that the treatment is to be free, or at low charges. The patients are to be treated in the most advisable manner.

While the language of the testator elsewhere is clear and definite, apt technical terms being used when required, and his plans certain, in the clause in dispute the language is very vague and uncertain, and no definite plan can be fairly made out—all is uncertain.

The position of the clause in the will, its minor purpose, the broad discretion, the uncertain and indefinite expressions, and the absence of any well-defined plan, are not indicative of command.

One of the purposes of the institution was the care of the indigent insane. The word "asylum" implies charity. In its original meaning the word means a place of refuge, a sanctuary. In its modern sense it means an institution for the protection and cure of persons afflicted, such as the blind, the deaf and dumb, the insane. Asylums are supported largely by donations and it is one of the objects to care for the poor. But an institution is none the less an asylum when it also takes patients for pay. Queen vs. Overseers, 6 Best & Smith 451. Such persons aid the institutions by the sums they pay and receive a skilled treatment and care, which would, except in such an institution, be beyond the means of any but the very rich.

The whole thing being considered, it is more reasonable to believe that Mr. Pratt, by the words in controversy, intended not to create a trust with a legal estate in the Sheppard Asylum and an equitable estate in the indigent insane, but to give the legacy to the Asylum beneficially and for the purposes for which it was incorporated, one of which was the care of the indigent insane, and that the words in controversy were added to the positive and comprehensive provisions relating to the disposition of the principal as indicating his reasons for the gift or his views about what would be the best use to put the income to.

It is very certain he did not intend his next of kin, for whom he had liberally provided in his lifetime, to have the property.

But there are other grounds upon which it must be held no trust was intended. In order to create a trust, the property which is the subject of the trust must be certain. In this case, the whole income, a gift of which might by construction carry the principal, is not conveyed. The income is to be "mainly" used in the way indicated. This precludes all idea of trust.

Williams vs. Worthington, 49 Md. 572.

Howard vs. Carusi, 109 U. S. 733.

Pennock's Estate, 20 Pa. St. 268.

The next claim is that a trust was created because the gift was to the cor-

poration, not for its general purpose, but for a special purpose. It is sufficient to say that it appeared that this direction was not imperative, there is consequently no trust.

But in addition to this is the fact that the rule of law is not as stated.

Barnum vs. M & C., 62 Md. 276.

Eutaw Baptist Church vs. Stevely, 67 Md. 496.

English vs. Vestry of P. E. C., 53 Md. 467.

Crisp vs. Crisp, 65 Md. 423.

———— vs. Vance, 39 La. An. 371.

McDonough vs. Murdock, 15 How. 367.

There being no trust and the title vesting immediately, there can be no question of perpetuities.

Such is the result of the application of these rules of construction which the wisdom of many generations has provided for ascertaining the intention of those who can no longer speak for themselves. It may be that cases occur where these rules, by reason of their general application, work injustice, but such is not the case at present. The wisdom of the law is shown when the result attained is considered in connection with the facts of this particular case. To put one's self in the position of the testator is a valuable rule in construing wills.

Mr. Pratt had resided in Baltimore since he was a very young man. He had amassed a large fortune in business enterprises. He was identified with the city and connected with many of our institutions, public and private, and took a lively interest in the welfare and progress of the community. His public spirit was shown in his lifetime, not only in a personal interest in and gifts to many of our scientific and charitable institutions, but in many other ways—notably in the gift of a large sum to endow a public library. His last wish was to continue his benevolent designs, and aid by his wealth, an afflicted class, sadly in need of care and protection.

He did this at the sacrific of no legal or moral obligation. He disappointed no reasonable expectations. He disinherits no children, for he left no descendants. His anxiety for the welfare of his widow is shown in liberal and careful provision for her future comfort. He bequeaths legacies to his friends, his name-sakes, the church at the place of his birth, to the town in which he was born for the support of a library, and to institutions in which he was interested. His business associates, his clerks and domestics, are all remembered.

Nor had he been unmindful of his kindred. He had, as he says in his will, provided liberally for them in his life-time, and it was stated in the argument he had divided among them the large sum of $1,100,000, nearly as much as he bequeathed the Sheppard Asylum.

Under these circumstances, the Court will not be subtle and astute in seeking for reasons to defeat the testator's cherished wish, nor conjure up, out of vague and indefinite expressions, a trust for the indigent insane for the sole purpose of defeating it, and depriving that class of the benefit of the testator's bequest.