ISAAC PRATT, Jr., AND SUSANNA K. TOBEY *vs.*
THE TRUSTEES OF THE SHEPPARD AND
ENOCH PRATT HOSPITAL ET AL.

*Precatory Trusts—Intention of Testator to Create a Trust
—Absolute Gift followed by Words of Recommenda-
tion—Uncertainty in Object or Amount—Trusts Void
for Uncertainty.*

The use of words of recommendation and desire in a will, in
connection with a devise of property, should not be con-
strued to create a binding precatory trust unless it appears
that the testator intended to create a trust.

When a testator gives property absolutely to a devisee, the
fact that he subsequently expresses a wish or desire as to
the use the devisee should make of the property, is not of
itself sufficient to cut down the prior absolute gift and create
a trust.

No inflexible meaning can be given to any precatory word so
that the same effect is accorded to it whenever used in the
will.

In determining whether precatory words in a will should be
construed merely as recommendations by the testator for the
guidance of the donee in the use of the property or as
creating an obligatory direction as to his dealing with it,
the Court considers that when the amount of the property
is indefinite and the objects referred to are uncertain, these
circumstances are evidence, though not conclusive, that the
testator did not intend to create a trust, when he did not
employ the formal words usual in the creation of trusts.

There is a distinction between a trust void for uncertainty and
an uncertainty in the object contemplated by words of
recommendation which is only indicative of the absence of
an intention to create a trust. In the former case the tes-
tator intends to create a trust but it fails for uncertainty in
the objects to be benefited, and the next of kin or heirs

at law become entitled to the property, while in the latter case the vagueness in the object is a reason for holding that no trust was intended.

Testator gave the residue of his estate to the trustees of the Sheppard Asylum upon the " condition and bargain " that the name of the corporation should be changed in a designated manner. A subsequent clause declared: " while I do not wish to alter the operations and management in the working of the said asylum as now existing and being carried on, it is my wish and will that the income from my said residuary estate shall be used to complete the present buildings . . . and after that the income from my aforegoing donation shall be devoted mainly to the care of 'the indigent insane in the most advisable manner at very low charges or absolutely free as the trustees of said corporation . . . may deem best." The Sheppard Asylum changed its name in accordance with the direction of the testator. *Held,* that the asylum took the estate devised absolutely, upon its compliance with the condition as to its name, and that the expression of the testator's desire as to the manner in which the income of the estate should be mainly used did not create an imperative trust imposing an obligation upon the asylum so to use it, and that consequently it is immaterial whether a trust for the care of the indigent insane is void for uncertainty or not.

Appeal from a decree of the Circuit Court No. 2 of Baltimore City (SHARP, J.).

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and PEARCE, JJ.

*W. Irvine Cross,* for the appellants.

The law gives effect to a man's last wishes as he states them. If any devise as stated be void, as to that devise, he is intestate. We do not form a conjecture as to what would have been his second best wish, and establish that. The wish as expressed, stands or falls. And when a man has, in the strongest language, stated that he leaves a legacy to a corporation for a distinct pur-

pose, we either give effect to that purpose as stated, or make void the whole legacy. We do not leave it to the corporation, free from the condition on the theory that he would have preferred that to an intestacy.

" *It is my wish and will.*" There was much talk below about "precatory words," and the Court has spoken of these as " vague and indefinite expressions." With deference, we submit that these are not precatory words, nor at all vague. Precatory words are addressed to the recipient of a bequest, asking (*preco*) him to do something with it, and sometimes interpreted as a command. *These are not precatory words, and they are not addressed to any legatee. They are distinct technical words used with strictness and care in their technical legal sense, and simply state a testamentary act.* The word " wish " when used to express a desire that an act shall be done by some person or persons may be treated as a precatory word, or word of request. It is often so used. When used in a will, however, it is generally construed as mandatory, even when addressed to a legatee. (1 *Perry on Trusts*, section 112.) But when a man in setting forth his last wishes in a will, makes the formal statement, " it is my wish," making no reference to any one; it is a formal testamentary act, and to call it a precatory word is without reason or authority.

Argument as to whether the trust was void for uncertainty is omitted.

The following authorities as to precatory trusts are from the brief of counsel for the appellant in the next succeeding case. (*E. J. D. Cross.*)

Each of the following phrases in wills has been held to create a trust:

" Advise him to settle." (*Parker* v. *Bolton,* 5 L. J. ch. 98.)

" Well assured." (*Macey* v. *Shurmer,* 1 Atk. 389; 1 Amb. 520; *vide Ray* v. *Adams,* 3 My. & K. 237.)

" Have full assurance and confident hope." (*McNab* v. *Whitbread,* 17 Bea. 299.)

" Authorize and empower." (*Brown* v. *Higgs,* 4 Ves. 708; 5 Ib. 495; 8 Ib. 561; 18 Ib. 192, and *Griffiths* v. *Evan,* 11 L. J. ch. 219; 5 Bea. 241.)

" Beg."   (*Corbet* v. *Corbet*, Ir. Rep. 7 Eq. 456.)

" In the full belief."   (*Fordham* v. *Speight*, W. N.
[75] 140.)

" Most heartily beseech."   (*Meredith* v. *Heneage*, 1
Sim. 553.)

" Confide."   (*Griffiths* v. *Evan*, 11 L. J. ch. 219; 5
Bea. 241, and *vide Shepherd* v. *Nottige*, 2 J. and H. 766.)

" Have the fullest confidence."   (*Shovelton* v. *Shovel-
ton*, 32 Bea. 143; *Re Downing*, 60 L. T. 140; *Wright* v.
*Atkyns*, 17 Ves. 255; 19 Ib. 299; *Webb* v. *Wools*, 21
L. J. ch. 625; 2 Sim. N. S. 267; *Palmer* v. *Simmonds*, 2
Drew. 225; *Curnick* v. *Tucker*, L. R. 17 Eq. 320; *Le
Marchant* v. *Le Marchant*, L. R. 18 Eq. 414.)

" In consideration the legatee has promised to give."
(*Clifton* v. *Lombe*, 1 Amb. 519.)

" Under the firm conviction."   (*Barnes* v. *Grant*, 26
L. J. ch. 92; 2 Jur. N. S. 1127.)

" Of course the legatee will give."   (*Robinson* v. *Smith*,
6 Mad. 194; *Lechmere* v. *Lavie*, 2 My. & K. 198.)

" Declare; " *vide* " Will and Declare," *post.*

" Desire."   (*Harding* v. *Glyn*, 1 Atk. 469; *Mason* v.
*Limbury*, cited *Vernon* v. *Vernon*, Amb. 4; *Trott* v. *Ver-
non*, 2 Vern. 708; *Pushman* v. *Filliter*, 3 Ves. 7; *Brest* v.
*Offley*, 1 Ch. Rep. 246; *Bonser* v. *Kinnear*, 2 Giff 195;
*Cary* v. *Cary*, Sch. & Lef. 189; *Cruwys* v. *Colman*, 9 Ves.
319; *Shaw* v. *Lawless*, L. & G. t. Sug. 154.   *Vide*, on
the contrary, De Diggles, 32 S. J. 608.)

" Direct; " *vide* " Order and Direct," *post.*

" Do not doubt."   (*Parsons* v. *Baker*, 18 Ves. 476;
*Taylor* v. *George*, 2 V. & B. 378; *Malone* v. *O'Connor*,
Ll. & G. 465; and *vide Sale* v. *Moore*, 1 Sim. 534.)

" Empower; " *vide* " Authorize and Empower," *sup.*

" Entreat."   (*Brevost* v. *Clarke*, 2 Md. 458; *Meredith*
v. *Heneage*, 1 Sim. 553, 555; and *vide Taylor* v. *George*, 2
V. & B. 378.)

" Hope."   (*Harland* v. *Trigg*, 1 Bro. C. C. 142; and
*vide Paul* v. *Compton*, 8 Ves. 380; *vide* " Assurance and
Hope," *sup.*; *Sv. Eaton* v. *Watts*, L. R. 4 Eq. 151.)

" Well know."   (*Bardswell* v. *Bardswell*, 7 L. J. Ch.
268; 9 Sim. 323; *Nowland* v. *Nelligan*, 1 Bro. C. C. 489;

*Briggs* v. *Penny*, 21 L. J. Ch. 265; 3 Mac & G. 546; 3
D. G. & S. 525; *Sv.* obs. on *Briggs* v. *Penny*, in *Stead* v.
*Mellor*, 46 L. J. Ch. 880; 5 Ch. D. 225; 36 L. T. 498.)

" Order and direct."    (*Cary* v. *Cary*, 2 Sch. & Lef.
189.)

" Recommend."    (*Tibbits* v. *Tibbits*, Jac. 317; 19 Ves.
656; *Horwood* v. *West*, 1 L. J. O. S. Ch. 201; 1 S. &
S. 387; *Paul* v. *Compton*, 8 Ves. 380; *Malim* v. *Keighley*,
2 Ves. Jr. 333, 529; *Malim* v. *Barker*, 3 Ves. 150; *Mere-
dith* v. *Heneage*, 1 Sim. 553; *Kingston* v. *Lorton*, 2 Hogan
166; *Cholmondeley* v. *Cholmondeley*, 14 Sim. 590; *Hart* v.
*Tribe*, 23 L. J. Ch. 462; 18 Bea. 215; *White* v. *Briggs*, 15
L. J. Ch. 182; 15 Sim. 33.)

" That ' recommend ' may amount to a command and
create a binding trust is certain.    It is equally certain
that the word is susceptible of a different interpretation.
It must depend upon the language of the particular in-
strument in which this word is found, in which of the
two senses it is to be taken." (Per KNIGHT BRUCE, V. C.,
*Johnson* v. *Rowlands*, 17 L. J., ch. 438; 2 D. G. & S.
356.)

" Request."    (*Pierson* v. *Gernet*, 2 Bro. C. C. 38;
*Eade* v. *Eade*, 5 Mad. 118; *Moriarty* v. *Martin*, 3 Ir.
Ch. Rep. 26; *Bernard* v. *Minshull*, 28 L. J. Ch. 649;
Johns. 276; *House* v. *House*, W. N. [74] 189.)

" Trusting."    (*Irvine* v. *Sullivan*, 38 L. J. Ch. 635;
L. R., 8 Eq. 673.)

" Trusting and Confiding."    (*Wademor Wood* v. *Cox*,
5 L. J. Ch. 361; 6 Ib. 366; 1 Keen 317; 2 My. & C. 684;
*Pilkington* v. *Boughey*, 12 Sim. 114.)

" Well known."    *Vide* " Know," *sup.*

" Will."    (*Eales* v. *England*, Pr. Ch. 200; *Clowdsley*
v. *Pelham*, 1 Vern. 411.)

" Will and declare."    (*Gray* v. *Gray*, 11 Ir. Ch. Rep.
218.)

" Will and desire."    (*Birch* v. *Wade*, 3 V. & B. 198;
*Forbes* v. *Ball*, 3 Mer. 437.)

" Wish and desire."    (*Liddard* v. *Liddard*, 29 L. J.
Ch. 619; 28 Bea. 266.)    *Sv. Stead* v. *Mellor, inf.*

" Wish and request."    (*Foley* v. *Parry*, 5 Sim. 138;
2 My. & K. 138; *Re Hutchings*, W. N. [87] 217.)

*Wm. Pinkney Whyte* and *George R. Willis*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

In these proceedings the validity of the twelfth, or the residuary, clause of the will of the late Enoch Pratt is assailed by his heirs at law and next of kin and by his alternative residuary legatees and devisees.    There are four cases which have been consolidated, but it is not necessary to set forth the pleadings, or any part of the pleadings therein, as the disposition of the questions presented for decision depends largely on the terms of the will.    The cases have been argued with marked zeal and ability on both sides, and we have been greatly aided by the discussion at the bar in our examination of the matters in controversy.

The clause in dispute is in these words: " Having in my lifetime liberally provided for my niece and nephews hereunder named, I do now hereby give, devise and bequeath all the rest and residue and remainder of my estate of every kind and description, whether real, personal or mixed, and wherever the same may be situate of which I may die possessed or be in any way entitled to at the time of my death, after the payment of all debts justly due by me, and after satisfying all the devises and bequests hereinbefore set forth, to The Trustees of the Sheppard Asylum, a corporation duly incorporated by the General Assembly of the State of Maryland by said name, style and title, and its successors forever, it being my intention and meaning to make said corporation, The Trustees of the Sheppard Asylum, the residuary legatee and devisee under this my last will and testament.

" And I direct my executors to set over, transfer and convey by proper deeds, assignments and transfers the said residue of my estate to the said corporation, upon and subject, however, to the following condition and bargain, namely:  That the said Trustees shall adopt as the name and style of said corporation the title of ' The Trustees of the Sheppard and Enoch Pratt Hos-

pital ' and shall obtain at the first session of the General
Assembly of Maryland after my death, an amendment
to their charter authorizing the said change of title and
adopting the said name of 'The Trustees of the Shep-
pard and Enoch Pratt Hospital' as the future title of
said corporation.

"While I do not wish to alter the operations and
management in the working of the said asylum as now
existing and being carried on, it is my wish and will
that the income from my said residuary estate shall be
used to complete the present buildings and grounds
and for the erection of such other buildings or building
as will accommodate not less than two hundred addi-
tional inmates, and after that the income from my
aforegoing donation shall be devoted mainly to the
care of the indigent insane in the most advisable man-
ner at *very low charges* or absolutely *free,* as the trustees
of said corporation in the exercise of their best judg-
ment as to the rate to be charged may deem best and
wisest to promote the object of this donation.

"Provided, however, and it is expressly my will, that
in case the said Trustees of the Sheppard Asylum fail
to obtain from the General Assembly of Maryland at
its first session after my death the amendment to the
charter of said institution .hereinbefore stipulated and
provided for, and fail to adopt the name for said cor-
poration of the 'Trustees of the Sheppard and Enoch
Pratt Hospital,' then and in that case it is my will and
I then give, devise and bequeath, in lieu of the afore-
going provision, the said residue of my estate to my
niece, Ellen J. O. Phinney, and to my nephews, Gerard
C. Tobey, Horace P. Tobey, J. Lowell Pratt, David G.
Pratt, Edmund T. Pratt and Moreland L. Pratt, to be in
that case set apart for and equally divided among them
and the issue *per stirpes* of any of them who may be
dead at the time of my decease, such issue to take the
share to which its or their parent would, if living, have
been entitled.

"I direct my executors, until it shall have been de-
cided, as above provided, whether the said condition of

my aforegoing devise and bequest of said residue will be performed; that is to say, whether the said corporation will obtain authority as aforesaid to change its title, and will in fact adopt the title above designated, to keep all buildings and improvements on my property insured and in good order and condition, and pay all charges and taxes thereon, and to collect the rents and income of said residue of my estate, and to invest the said net income in Baltimore City Stock, the same to be added to and constitute a part of the said residuary estate."

Mr. Pratt died in September, eighteen hundred and ninety-six. At the January session, eighteen hundred and ninety-eight, of the General Assembly of this State, a statute was enacted changing the corporate name of the Trustees of the Sheppard Asylum to " The Trustees of the Sheppard and Enoch Pratt Hospital," and this change was agreed to by the body corporate. The condition, and the sole condition, prescribed in the twelfth clause of the will having been complied with, it is now insisted: *first*, that the residuary clause creates a trust which is void because so vague and uncertain as to the objects to be benefited that it cannot be enforced, and that, therefore, the next of kin and heirs at law—a brother and a sister of the testator—are entitled to the property constituting the residuum; *secondly*, that the residuary clause creates a perpetuity and is therefore void; *thirdly*, that the *Act of 1898, ch. 17*, changing the name of the Sheppard Asylum to the Sheppard and Enoch Pratt Hospital, is unconstitutional and void, and that therefore the residuary estate passed to the alternative residuary legatees and devisees—a niece and six nephews. The last position will be considered in the next succeeding case. As the second proposition is dependent entirely upon the disposition which may be made of the first one, we now proceed to examine and consider the first contention.

It is safe to say that thousands of cases have been decided where the same or synonymous words in different wills have, in view of the unlike circumstances at-

tending their use and the contrariety of the contexts where they are found, received different, and often widely different interpretations; and it has in consequence frequently been observed that the effect given or the meaning ascribed to a particular word in the construction of one will is by no means a sure guide for its application or a reliable definition of its meaning when used in an apparently similar clause of some other individual's will. And this, of necessity, must be true when we take into account the diversity of the subjects dealt with; the inequality in the capacity of the testators to clearly express their intentions; the flexible character of almost every word in a living and a constantly changing language; and the numerous and dissimilar designs and motives revealed in testamentary dispositions. If, without first finding from the four corners of the instrument what the testator's purpose or intention really was, we turn for its ascertainment to the multitude of adjudged cases wherein the words he has used have been given a meaning in other wills, his design may be easily frustrated and though perfectly plain in itself, might and most probably would be so shrouded in obscurity as to be hopelessly unintelligible. It is not meant by what has just been said to intimate that there are no established or recognized rules or canons of construction to which resort may be had in cases of doubt or difficulty, to solve a seeming uncertainty. These rules or canons are invoked, not to defeat, but to give effect when possible to the expressed intention. To avoid misunderstanding it may not be amiss to remark that we distinguish between rules of construction which are appealed to with a view of upholding an intention and rules of policy or of property which cannot be disregarded even though they defeat the most clearly stated purpose.

If we lay out of view for the moment all canons of construction and critically read the words of the clause in controversy—for the simplest and most obvious method of discovering the intention of a testator is to read the language he has employed to give expression to that intention—his purpose is clearly manifested; and if that

purpose, thus declared, does not invade some rule of property or is not repugnant to some settled policy of the law, it ought to, and certainly will, prevail.   What, then, has he said?

He starts with the assertion that he had in his lifetime liberally provided for his niece and nephews who are the alternative residuary legatees and devisees.   That he did do this is abundantly clear from the evidence. To each of the six nephews and to the niece and to another nephew who was not named as an alternative legatee, he gave in eighteen hundred and ninety and ninety-two, two hundred thousand dollars, or one million six hundred thousand dollars in the aggregate. He therefore did not intend that they, or the appellants in this case who are not mentioned in the will, should receive any part of the estate disposed of by the residuary clause, unless as respects the alternative residuary legatees and devisees the condition on which the gift to the Sheppard Asylum was made to depend should fail to be complied with by the omission of the Legislature to change the name of the asylum to the Sheppard and Enoch Pratt Hospital.   We begin then with the postulate—and an obvious postulate it is—that the testator did not design these contesting parties to have any portion of his residuary estate at all; and if by reason of an interpretation that may be placed on his will, they do succeed to it, they will get it in spite of his unmistakable intention that they should not possess or enjoy any part or parcel of it whatever.   But it is equally clear that he intended the Sheppard Asylum— a corporation " *and its successors forever* "—to have and to hold this residuum; for he explicitly declares: " it being my intention and meaning to make said corporation, The Trustees of the Sheppard Asylum, the residuary legatee and devisee under this my last will and testament."   Nor does he stop with that emphatic declaration, for he follows it with a specific instruction to his executors " to set over, transfer and convey by proper deeds, assignments and transfers the said residue of my estate to the said corporation, upon and subject, how-

ever, to the following condition and bargain"; and then comes the provision with respect to the change of name. If the clause had stopped here there can be no pretense that an absolute estate in the personalty and a fee in the realty had been given, dependent on the single condition in regard to the change of the name; and when that condition was complied with by the passage and acceptance of the *Act of 1898, ch. 17,* the title—assuming the clause had stopped as just indicated—would have become indefeasible, provided the statute is valid and free from constitutional objections. It is too clear for discussion that up to this point of the clause Mr. Pratt obviously intended the Sheppard Asylum to take by deeds, transfers and assignments from his executors, and not immediately under the will alone, the whole and entire interest and estate which he himself had in the residuary property. He gave it to the Sheppard Asylum upon a condition, a bargain, and when that condition and bargain had been complied with and entered into the corporation was in a condition to enforce a conveyance and transfer from the executors to itself. The gift being made upon a single condition and bargain and being made in terms that import an absolute donation upon a compliance with the condition and a performance of the bargain, it is not to be assumed, in the absence of an express declaration, certainly not upon a bare construction, when later on he uses words looking to the disposition to be made of the *income* that may arise from the donation, that he intended by those words to convert the original gift into a gift merely in trust—to cut down the absolute estate by engrafting on it *through the income* an imperative trust—particularly when the words thus relied on to accomplish that result are capable of an interpretation which will not bring about such a palpable conflict or inconsistency in one and the same clause of the will.

There is a peculiar significance in the use of the word " *bargain* " as indicating the nature of the estate given by the residuary clause. The gift is made upon something more than an ordinary condition, for the condi-

tion is coupled with a term that imports the charac-
teristics and the elements of an obligatory contract.
The testator contracts—he bargains—to give the Shep-
pard Asylum the residuum of his estate provided the
Trustees agree to include his name in the title of the
body corporate.   The Trustees of the Sheppard Asylum
are to become the owners of the property for and upon
the consideration which he specifically named.   Can it
be doubted or questioned when this bargain was closed
—offered by him and accepted by the body corporate
and sanctioned by the General Assembly—that the right
of the corporation to possess and enjoy as its own, the
fruits of the contract was complete?   If this right was
complete and perfect, as we think it manifestly was,
then a beneficial, an actual, ownership must have been
intended by the testator to be vested in the Sheppard
Asylum; and it took, or was designed to take, an abso-
lute estate.

After making this absolute donation the testator de-
clares that whilst he did not wish to alter the operations
and management in the working of the Sheppard Asy-
lum as then conducted, " it is my *wish and will* that the
income from my residuary estate shall be used to com-
plete the present buildings and grounds and for the
erection of such other buildings or building as will ac-
commodate not less than two hundred additional in-
mates, and after that the income from my aforegoing
donation *shall* be devoted *mainly* to the care of the
indigent insane in the most advisable manner at very
low charges or absolutely free, as the trustees of said
corporation in the exercise of their best judgment as to
the rate to be charged may deem best and wisest to
promote the object of this donation."   This is the clause
which, it is claimed, creates a trust, and was intended
to create a trust; and which trust when created, it is
further insisted, is void for uncertainty.   We are thus
brought face to face with the question: Does this
clause, located as it is, following a gift that is unmis-
takably absolute, cut down the estate thus given to a
trust estate?   Does the clause raise an imperative trust?

As we have said, and now repeat, it cannot be assumed in the absence of an express declaration that the testator meant to undo what he had just done—that he intended to convert what he was so careful to describe as an absolute estate into one far different and less unlimited. He has not *said* that he gave the donation upon trust. He has said all he well could say to indicate the contrary. If, however, a trust has been created we find no manifestation of an intention to create it, unless the words " it is my *wish* and *will* " and the words " *shall* be devoted," furnish sufficient evidence of such a purpose. The effort therefore is to thrust upon this clause a construction that will make it create a trust, and then to have the trust so raised by construction declared void; and thus to defeat *in toto* what the testator has declared to be his donation to the Sheppard Asylum. Now, how is this sought to be accomplished?

With great diligence, zeal and ability vast numbers of cases construing the words " wish " and " will " and kindred words, have been collected on the briefs. In those cases these words and similar ones have been held to create trusts, and it is contended they accomplish that result here. It is undoubtedly true that these and other like precatory words will, under conditions but not invariably, raise or imply a trust. It would be an almost endless, as it certainly would be a wholly unprofitable, task to enter upon an examination of these numerous cases. The whole question is one of the interpretation of each particular will. Whilst the doctrine is settled that precatory words may raise a trust, the application of the doctrine to individual cases depends entirely upon the provisions of each separate will. *Negro Chase* v. *Plummer*, 17 Md. 177. " Precatory words may be used which, standing alone, would under the decisions create a trust, but they may be qualified and controlled by other expressions showing that the gift is absolute; and that every thing is left to the discretion of the devisee or legatee," 2 *Pom. Eq.*, sec. 1016. " Expressions sufficient *per se* to create a trust may be deprived of their effect by the context expressly declaring or by implica-

tion showing, that no trust was intended." 1 *Jar. on Wills* (5th Am. Ed.), star p. 385.   " In some cases where the strongest terms were employed, relief has been denied," that is, a trust has not been declared.  *Negro Chase* v. *Plummer, supra.*

Whatever may have been the results reached in the earlier cases on this subject there is a strong tendency nowadays to restrict the doctrine of precatory trusts within more reasonable and somewhat narrower bounds than formerly; and Mr. Pomeroy states that upon the authority of more modern decisions the whole doctrine may be summed up in a single proposition.   And this is the proposition which he announces: " In order that a trust may arise from the use of precatory words the Court must be satisfied from the words themselves taken in connection with all the other terms of the disposition *that the testator's intention to create an express trust was as full, complete, settled and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner.*   Unless a gift to A with preca- tory words in favor of B is in fact *equivalent in its mean- ing, intention and effect* to a gift to A ' in trust for B,' then certainly no trust should be inferred."  2 *Pom. Eq.,* sec. 1016.   The same doctrine is stated in *Story Eq. Jur.,* sec. 1069, in this way: " Accordingly, in more modern times, a strong disposition had been indicated not to extend this doctrine of recommendatory trusts; but as far as the authorities will allow, to give to the words of wills their natural and ordinary sense, unless it is clear that they are designed to be used in a peremptory sense."

Whether or not a trust has been created in any given case by the use of precatory words is, in the last an- alysis, a question of construction and interpretation to ascertain the *intention.*   Did the testator by the use of the words he employed *intend* to create a trust?   " The effect of expressions of this nature in creating a trust de- pends entirely on the *supposed intention* of the donor (or testator) to be gathered from the tenor of the instru- ment."   *Hill on Trustees,* 114, quoted with approval in *Williams* v. *Worthington,* 49 Md. 579.

In *Sale* v. *Moore*, 1 Sim. 534, Sir Anthony Hart, V. C., said: " The first case that construed words of recommendation into a command made a will for the testator; for every one ' knows the distinction between them." In *Wright* v. *Atkyns*, 1 Ves. &.B. 313, Lord Eldon remarked: " This sort of trust is generally a surprise on the intention, but it is too late to correct that." In *Meredith* v. *Heneage*, 1 Sim. 542, Chief Baron Richards, in commenting on prior decisions, observed: " I entertain a strong doubt whether in many or perhaps in most of the cases, the construction was not adverse to the real intention of the testator. It seems to me very singular that a person who really meant to impose the obligation established by the cases should use a course so circuitous, and a language so inappropriate and obscure to express what might have been conveyed in' the clearest and most usual terms—terms the most familiar to the testator himself and to the professional or other person who might prepare his will. In considering these cases it has always occurred to me that if I had myself made such a will as has generally been considered imperative, I should never have intended it to be imperative; but on the contrary, a mere intimation of my wish that the person to whom I had given my property should, if he pleased, prefer those whom I proposed to him, and, who next to him, were at the time the principal objects of my regard."

It certainly seems singular that a testator having a *full and settled intention to create a trust* (for that is what must be read on the face of the will or no trust can exist), should adopt a mode which at best appears to be a mere suggestion or inference, instead of employing the familiar method and creating the trust by an express declaration.    And this becomes even more singular when we find in the third clause of this identical will that a trust *is* created by the use of apt and appropriate words.    Had Mr. Pratt intended to give this residuum in trust he could have used precisely the words he employed in the third clause where he designed to found a trust.    " It can scarcely be presumed, that every tes-

tator should not clearly understand the difference be-
tween such expressions (precatory words) and words
of positive direction and command; and that, in using
the one, and omitting the other, he should not have a
determinate end in view." *Story Eq. Jur.*, sec. 1069.

If there be one thing settled on this subject of the
effect of precatory words, it is that such words are not
always imperative.   " They are deemed to be flexible in
character and must yield, if the imputed interpretation
be against the rules of law *or so inconsistent with other*
provisions of the will that both cannot stand together."
*Negro Chase* v. *Plummer, supra.*   " Where the words of
a gift expressly point to an *absolute* enjoyment by the
donee himself, the natural construction of subsequent
precatory words is that they express the testator's belief
or wish without imposing a trust."   1 *Jar. on Wills*
(5th Am. Ed.), star page 389.   Now we are at a loss to
see how Mr. Pratt could well have given a more absolute
estate in this residuum to the Sheppard Asylum than he
did give in the beginning of the twelfth clause.   There
is not only no suggestion of a trust in the donating
words, but the very scheme of the gift and the particular
method prescribed for the conveyance and transfer of
the property by the executors to the beneficiary, forbid
the inference that these deeds or transfers were to con-
tain provisions fettering the estate with any trust what-
ever.   Obviously he intended the Asylum to hold
mediately under the will, immediately under the con-
veyances and transfers, and he gave no intimation that
any thing less than the unlimited estate, unclogged by
any trust, should be conveyed and transferred by his
executors.   The words of the gift—that is, the effective
donating words—unequivocally point to an absolute
enjoyment of the property by the donee, and in this
important respect they radically differ from the language
in *Maught* v. *Getzendanner,* 65 Md. 527, where this Court
said :   " It is manifest from the whole will that the tes-
tator never intended to give him (the legatee) this prop-
erty in his own right and for his own use."   At the
very threshold of the residuary clause we are confronted

by an absolute gift, and if the subsequent provisions of the same clause create, by the use of the precatory words alluded to, a trust that qualifies the antecedent gift, there is a palpable repugnance in the same clause. Such a repugnance is indicative of an intention not to create a trust; and when an intention not to create a trust is manifested in this or in any other way, subsequent precatory words are to be interpreted, not as cutting down the prior absolute gift, but as expressive of the testator's wish and desire, without imposing an imperative direction.

We have heretofore remarked and we now repeat that no inflexible meaning has ever been, or possibly can be, ascribed to any precatory word, whereby that word whenever it happens to be used in a testamentary paper, must invariably be given precisely the same and no different effect. Indeed, as observed by POLLOCK, C. B., in *Reg.* v. *Skeen,* Bell. C. C. 97, "there is no word in the English language which does not admit of various interpretations." The varying circumstances in which it is employed give rise to its various meanings. The character of the estate given to the first taker is always a consideration of much significance in determining whether the words relied on to create a trust are recommendatory or imperative. Accordingly a distinction is drawn between cases where the gift to the first devisee is for life only and those in which the gift is absolute with superadded words, *Howarth* v. *Dewell,* 6 Jur. (N. S.) 1360; *McClernan* v. *McClernan,* 73 Md. 287; and precatory words which in the one case would create a trust would be insufficient to do so in the other. We are dealing now with an absolute gift followed by precatory words.

But in addition to this: " In ascertaining whether the precatory words import merely a recommendation or whether they import a definite, imperative direction to (the legatee) as to his mode of dealing with the property, the Court will be guided by the consideration whether the amount he is requested to give is certain or uncertain, and whether the objects to be selected are certain

or uncertain; and if there is a total absence of explicit
direction as to the *quantum* to be given, or as to the
objects to be selected by the donee of the property, then
the Court will infer from the circumstance of the testa-
tor having used precatory words expressive only of
hope, desire or request, instead of the formal words
usual for the creation of a trust, that those words are
used, not for the purpose of creating an imperative
trust, but simply as suggestions on the part of the tes-
tator for the guidance of the donee in the distribution
of the property." 1 *Jar. on Wills* (5th Am. Ed.), star
page 396-397. In the celebrated case of *Morice* v. *Bishop
of Durham,* 10 Ves. 522, LORD ELDON held that the
indefinite nature and *quantum* of the subject, or the
indefinite nature of the objects referred to in a will not
expressly creating a trust, is always used by the Courts
*as evidence* that the mind of the testator was not to
create a trust. Or, as somewhat differently stated in
*Handley* v. *Wrightson et al.,* 60 Md. 198, precatory words
will create a trust where the testator has pointed out
with clearness and certainty the objects of the trust,
and the subject-matter on which it is to attach, when the
contrary intention does not appear from the context or
by necessary implication.

But it must be borne in mind that there is a distinc-
tion between a trust that is void for uncertainty, and an
uncertainty that is simply indicative of the absence of
an intention to create a trust. In the one case there is
no uncertainty as to the intention to create a trust, but
merely an uncertainty as to the objects to be benefited
or the subject to be affected; in the other case, there
is simply an uncertainty as to whether any trust was
intended to be created at all. If it be uncertain as to
whether there was an intention to create a trust, it is
obviously not the province of the Courts to engraft a
trust upon the gift; but if it be apparent from the whole
will that a trust was intended to be established, then
the uncertainty as to the objects or the subject of that
trust, will not indicate that there was no intention to
raise a trust, but the uncertainty will avoid the trust

attempted to be founded.   .Where the expressions have been held too vague to show an intention to create a trust, the devisee or legatee retains the property for his own use; but where the intention to create a trust is sufficiently expressed and yet the objects or the subjects of it are uncertain, the gift fails and the heir or next of kin is let in to the beneficial ownership.   It is precisely this distinction that runs through all the Maryland cases from *Tolson* v. *Tolson*, 10 G. & J. 159, where the doctrine of precatory trusts was first recognized in its broadest form in this State, down to *Nunn* v. *O'Brien*, 83 Md. 198, the latest decision and one more in accord with the modern tendencies of the Courts on this subject.   So in *Saylor* v. *Plaine*, 31 Md. 158, and in *Maught* v. *Getzendanner*, 65 Md. 527, the intentions to create trusts were obvious and apparent, but the objects were uncertain in both instances.   The trusts consequently failed, and as it was clear in each case that the legatees named were not designed to have any beneficial interest in the legacies, the next of kin took the property.   It may, therefore, be regarded as established and settled in this State that where a trust is specifically and clearly intended to be created and there is an uncertainty in the objects to be benefited or in the subject to be affected, the trust will fail and the next of kin will be entitled to the legacy.   *Dashiell* v. *Atty.-General*, 6 H. & J. 1; *Wildeman* v. *Mayor &c. Balto.*, 8 Md. 551; *Church Extension* v. *Smith*, 56 Md. 362; *Yingling* v. *Miller*, 77 Md. 104.   These were all cases where there was no doubt that trusts were intended to be created.   Apt words were used for that purpose, but because the objects were indefinite the trusts failed.   We do not question that doctrine—we distinctly re-affirm it.   But where it is sought to show by implication or from the use of precatory words following an absolute gift, that a trust was intended to be fastened on the gift, an uncertainty as to the objects or as to the subject of the alleged trust will be a reason, not necessarily conclusive, but still a reason, for holding that no trust was designed by the testator.   This is very clearly stated by LORD CHAN-

CELLOR TRURO in *Briggs* v. *Penny,* 3 McN. & G. 546: " It is most important," he remarked, " to observe that vagueness in the object will unquestionably furnish reason for holding that no trust was intended, yet this may be countervailed by other considerations which show that a trust was intended, while at the same time such trust is not sufficiently certain and definite to be valid and effectual . . ." See too *Williams* v. *Worthington, supra.*

Now it is contended that the direction to apply certain portions of the income " mainly to the care of the indigent insane in the most advisable manner at very low charges or absolutely free as the trustees of said corporation in the exercise of their best judgment as to the rate to be charged may deem best and wisest to promote the objects of this donation," is so vague and indefinite as not to be capable of being enforced; and it is insisted as this direction follows the words, " it is my wish and will,"a trust was attempted and was intended to be created for indefinite objects, and that the next of kin and heirs at law are entitled to the property. If it be conceded that the objects of the alleged trust —the indigent insane—are uncertain, it by no means follows that the residuary clause must be stricken down. And it does not follow that the residuary clause must be stricken down, because no matter how indefinite the terms " indigent insane " may be, that indefiniteness will not affect the prior absolute gift, unless instead of being an absolute gift it was merely a gift in trust for the indigent insane. The intention to create a trust for the indigent insane must first clearly appear, as in *Dashiell* v. *Atty.-General,* or in *Maught* v. *Getzendanner,* and it must also be manifest that the legatee—the Sheppard Asylum—was not designed to have a beneficial interest as in *Saylor* v. *Plaine,* before the mere vagueness of the objects can strike down the antecedent absolute gift. But the very question at issue is whether a trust was *intended* to be raised; and to invalidate the whole bequest because the objects of the alleged trust are indefinite, before determining that there is a·trust at all,

is to assume the existence of the very matter in dispute—the precise thing that is controverted.   Obviously wherever, as here, there is an unqualified, absolute gift (as this became after the adoption and acceptance of the *Act of 1898, ch. 17*, treating that Act as valid), and it is alleged that that gift has been cut down by the superaddition of precatory words and converted thereby into a trust estate; the fact that there is no sufficient designation or description of the objects of the trust, naturally suggests, not the inference that there was an attempt to create an unenforcible trust, but, on the contrary, leads to the conclusion that no trust at all was intended; and that therefore the precatory words were used to indicate that the testator designed to communicate a discretion and not to impose an obligation.   This process of reasoning does not uphold a trust that is invalid because it is invalid; but it refuses to convert by construction an absolute gift into one upon trust, when from the vagueness of the alleged trust it is apparent the testator never designed to create any trust whatever. It appeals to the uncertainty of the alleged trust to show that no trust was contemplated.   Always bearing in mind that there is apparent on the face of the will a purpose that the legatee shall take a beneficial interest in the legacy, and that there is no explicit declaration of a trust coupled therewith, there is nothing in sound reason and no principle in the decided cases to preclude a resort to the uncertainty of the alleged trust for evidence apparent on the face of the will itself that the testator did not intend to declare a trust.   The very uncertainty appealed to, to defeat the donation is, therefore, under the terms of this particular will, a cogent reason for holding that no trust was intended to be created at all.

" It may be laid down, however, as well settled upon all the authorities, that in order to justify the Court in construing precatory words in a will as creating a trust, it must appear that the property which is the subject of the trust is definite and certain."   *Williams* v. *Worthington, supra.*   There is no uncertainty in that part of the

clause which respects the completion of the buildings
or the construction of a new building, *Crisp* v. *Crisp,*
65 Md. 422; and if there be any vagueness in regard to
the subject of the alleged trust it must be in the request
or direction that the income " shall be devoted *mainly*
to the care of the indigent insane." Here is an appar-
ent uncertainty in the subject. What does *mainly* de-
voted mean? Does it mean the greater part of the
income? If so, does it mean a fraction more than a
moiety, or a fraction less than the whole? Clearly the
*quantum* of the subject dealt with by these precatory
words is unascertained and indefinite. And this cir-
cumstance is a reason for holding, in view of all the
other terms of the will, that no trust was intended.

Upon the entire will, in effect the testator has said to
the Sheppard Asylum: I give you this property upon
a single condition and bargain, which is that you insert
my name in your corporate title. When you have done
that the property is yours absolutely. But though it
is yours absolutely by your acceptance of my condition;
still I wish you would do a particular thing with *part* of
the *income.* But this " wish and will " clause relating
to the income is not made a condition—that is, does
not embody a condition—upon compliance with which
your absolute ownership of the *corpus* of the property
is in any way to depend; for I have annexed but *one*
condition in respect to that, and this " wish and will "
clause does not contain that condition.

It should not be forgotten that words of recommen-
dation and other words precatory in their nature, imply
a discretion as contradistinguished from peremptory
orders, and therefore ought to be so construed, " unless
a different sense is *irresistibly* forced upon them by the
context." *Williams* v. *Worthington,* 49 Md. 585.

If we were disposed to rest the decision of this case
upon mere precedent—that is, upon the construction
placed on some parallel provision of another will—in-
stead of grounding it upon principles applicable alike
to all wills, we would rely on the case of *Negro Chase* v.
*Plummer, supra.* The will there interpreted contained

an absolute bequest to the testator's sister, and there were superadded the following precatory words respecting certain slaves, part of the property absolutely bequeathed: " It is my *wish and desire*, in case my sister Minny die without issue, that she *shall* will and devise all my negroes to be free, or manumit them in any other way she may think proper; this request I hope she will comply with in time, *so as to carry my wish into effect.*" Afterwards the legatee died intestate without having manumitted the slaves; and it was contended by the slaves that they were entitled to their freedom, because the precatory words raised a trust in their favor. But this Court, speaking by the late JUDGE TUCK, said: " In the will before us the language is as plain as in any of the cases to be found in the books—on this point there is no difficulty—yet, looking to the entire instrument, the property, the nature of the supposed trust, and the requirements of our laws in reference to manumission, we have come to the conclusion that such relief (that sought by the slaves) cannot be granted." Notwithstanding the strong expressions just quoted from the will, that it was the testator's " wish and deside " that the legatee " *shall* " liberate the bequeathed slaves, it was held that these words did not convert the absolute gift of the slaves into a gift of them upon a trust, because such a construction would have created a repugnancy in the same clause between the absolute gift and a gift upon a trust, and because the trust set up, if declared, would have been against the rules of law. It would have been contrary to the rules of law because the mode then provided by statute for the manumission of slaves was different from the one contemplated by the will. In spite of the strong precatory words no trust was allowed to be raised by them for the reason just stated, but not because the words themselves would not under other conditions have been sufficient to create a trust. The case pointedly illustrates the application of the principles we have been discussing; and it unequivocally holds that precatory words of little, if of any, less apparently imperative character

than those used by Mr. Pratt, must yield when the whole instrument, the obvious intention of the testator and the nature of the supposed trust, indicate that it was not the purpose of the testator to create a trust at all.

Without going into any further discussion, we conclude by saying that in our opinion judging from the face of the entire will it was not the intention of Mr. Pratt to create an imperative trust when he used the precatory words contained in the residuary clause; and that, therefore, the Sheppard Asylum took the property covered by the residuary clause without that property being impressed with any trust whatever. This being so, of course, no question as to a perpetuity can possibly arise; and it follows, necessarily, so far as the appellants in this case are concerned, that there is no error in the decree from which they have appealed. That decree denied them the right which they set up to the property disposed of by the residuary clause, and being right in this particular it will be affirmed.

> *Decree affirmed with costs in this Court to be paid out of the fund.*