HELEN TURNER SANDS, ET AL. *v.* CHURCH OF THE ASCENSION AND PRINCE OF PEACE
(and four other cases*)

[Nos. 22-26, January Term, 1943.]

* The companion cases against the same appellee are The Convention of the Protestant Episcopal Church of the Diocese of Maryland, the Trustees of the Protestant Episcopal Seminary and High School in Virginia, the Johns Hopkins University, et al., and the St. James First African Protestant Episcopal Church.

*Decided March 17, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Charles C. Wallace* and *Carlyle Barton,* with whom were *John M. Butler* and *Venable, Baetjer & Howard* on the brief, for appellants in Nos. 22, 23, 24 and 25.

*John A. Cobb,* with whom were *Cobb, Howard & Hayes* and *Nicholas & Gosnell* on the brief, for the appellant in No. 26.

*G. C. A. Anderson* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

On December 5, 1903, James B. Smallwood and John Black, members of the vestry of the Church of the Ascension, then located on the corner of Arlington and Lafayette Avenues in Baltimore, presented to the vestry $20,000 in bonds together with the following letter:

"We have this day given you $20,000 in bonds bearing 5% interest to be applied to the payment of the Ground Rent on the Church of $1,000 per annum as it may fall due during the year.

"James B. Smallwood gives $10,000 5% bonds of the University of Maryland.

"John Black gives $10,000 5% bonds of the Brooklyn Elevated.

"These bonds are to be deposited in a box in the Mercantile Trust and Deposit Co. in the name of the Vestry of the Church of the Ascension. * * *

"It is our wish that the income from these bonds be used only for the payment of the Ground Rent as it becomes due and said income is not to be used for any other purpose whatsoever, neither must the income of the bonds or the bonds be used to borrow money on. Further if at any time the Vestry can buy out or extinguish the Ground Rent at a price satisfactory to them, they can sell the bonds and apply the proceeds to said extinguishment of the Ground Rent. Also, if at any time the Vestry can sell the bonds and buy other securities that they may deem better or more profitable, they can do so, but must replace the securities so purchased in place of those sold."

In 1931 Ascension Church united with the Church of the Prince of Peace under the name of Church of the Ascension and Prince of Peace, and in 1932 the vestry agreed to sell the abandoned church property, subject to annual ground rent of $1,000, to the Convention of the Protestant Episcopal Church of the Diocese of Maryland for the sum of $40,000. The Convention assigned the contract to St. James First African Protestant Episcopal Church. The contract of sale made no reference to the bonds. In 1941 a certified public accountant found the letter written by Smallwood and Black, both of whom died more than a quarter of a century ago. This suit was brought to determine the ownership of the bonds and the sum of $7,093.33, which has accumulated from the coupons and is now held by the Mercantile Trust Company as custodian. It was contended by the residuary legatees under the donors' wills (appellants in Nos. 22, 23, 24 and 25) that the bonds were impressed with a trust, and when the bonds were no longer needed for the purpose intended, a resulting trust arose in favor of the donors'

estates. The chancellor decreed that the Church of the Ascension and Prince of Peace owned the bonds and cash absolutely.

In England the High Court of Chancery laid down the invariable rule that a trust should never be presumed by implication of law except in case of absolute necessity. Lord Nottingham said: "The reason of this rule is sacred; for if the Chancery do once take liberty to construe a trust by implication of law, or to presume a trust unnecessarily, a way is opened to the Lord Chancellor to construe or presume any man in England out of his estate * * *." *Cook v. Fountain,* 3 Swanst. 585, 592. It has been held in Maryland that the party seeking to establish a resulting trust has the burden of proof. *Vogel v. Vogel,* 157 Md. 147, 153, 145 A. 370. To establish a resulting trust, a party must produce clear and satisfactory evidence of circumstances which raise an inference that the person transferring the property did not intend to give to the donee the beneficial interest in the property transferred. Such a trust arises only where it may reasonably be presumed to be the intention of the parties as determined from the facts and circumstances existing at the time of the transaction out of which it is sought to be established. A court of equity declares a resulting trust in favor of the donor for the purpose of carrying out what appears from the circumstances would probably have been his intention, if he had thought of the situation which has arisen. If the donee was not intended to have the beneficial interest in the estate, and no other effective disposition has been made of it, it is held that the donor is entitled to it. *Latrobe v. American Colonization Society,* 134 Md. 406, 106 A. 858; *Springer v. Springer,* 144 Md. 465, 125 A. 162. However, the evidence necessary to establish a resulting trust must be so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust. *Semple v. Semple,* 90 Fla. 7, 105 So. 134, 136.

The donors in this case did not create a trust. They stated that they were making a gift of the bonds, and then expressed the wish that the income.therefrom would be used for the payment of the ground rent. The vestry thanked the benefactors for "their munificent gift of $10,000 each for the extinguishment of the ground rent." It was urged by counsel that the word "wish" sometimes has the effect of creating a trust. It is undoubtedly true that no technical words are required for the creation of a trust, provided that the language and the circumstances clearly show that such was the intention. Whether or not a trust has in fact been created in a particular case by the use of precatory words is, in the final analysis, a question of intention. One of the fundamental rules of construction is that the intention of the donor must govern if consistent with the rules of law, and this intention must be gathered from the entire instrument. It is recognized that where a writing imports the granting of absolute ownership to the donee, and there are additional words expressing the donor's wish as to the use of the property, no precatory trust has been created. *Nunn v. O'Brien,* 83 Md. 198, 34 A. 244; *Pratt v. Trustees of Sheppard & Enoch Pratt Hospital,* 88 Md. 610, 622, 42 A. 51, 54; *Bennett v. Baltimore Humane Impartial Society,* 91 Md. 10, 19, 45 A. 888, 889; *Sieling v Sieling,* 151 Md. 536, 551, 135 A. 376, 382. It is also well established that a person cannot be both the trustees and the *cestui que trust.* It is obvious that in order to create a trust the legal estate must be separated from the beneficial enjoyment, and therefore a trust cannot exist where the same person possesses both. *Doan v. Parish of Ascension,* 103 Md. 662, 64 A. 314, 7 *L. R. A., N. S.,* 1119, 115 *Am. St. Rep.* 379; *Charles T. Brandt, Inc. v. Young Women's Christian Ass'n,* 169 Md. 607, 182 A. 452. So it was held in *Baltzell v. Church Home & Infirmary,* 110 Md. 244, 274, 73 A. 151, 157, that where property is given to a corporation for such uses as are within the scope of its corporate powers, the conveyance does not create a trust. Likewise, in *Mather v. Knight,* 143 Md.

612, 123 A. 109, it was decided that a testamentary gift to the Convention of the Protestant Episcopal Church in the Diocese of Maryland for the use of Hannah More Academy did not create a trust, inasmuch as the Academy is an agency of the Convention in carrying out one of its corporate objects and purposes.

The donors did not create an estate on condition. It is a familiar maxim that conditions subsequent are not favored in law, for the breach of such a condition causes a forfeiture, and the law is adverse to forfeitures. 4 *Kent's Commentaries*, 130. In 1863 Chief Justice Bigelow announced the rule of construction in the Massachusetts Supreme Judicial Court: "A deed will not be construed to create an estate on condition, unless language is used which, according to the rules of law, *ex proprio vigore*, imports a condition, or the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated." *Rawson v. Inhabitants of School District No. 5 in Uxbridge*, 7 Allen, Mass. 125, 83 *Am. Dec.* 670, 672. The Court of Appeals emphasizes that a deed should not be construed as a grant on condition subsequent, solely for the reason that it declares the purpose for which the granted property shall be used, where such purpose will not inure specially to the benefit of the grantor and his heirs but is general and public in its nature, and where there are no words indicating an intent that the grant is to be void if the declared purpose is not fulfilled. *Kilpatrick v. City of Baltimore*, 81 Md. 179, 194, 31 A. 805, 806; *Faith v. Bowles*, 86 Md. 13, 37 A. 711. It is reasoned that when the language of an instrument does not clearly indicate the grantor's intention that the property is to revert to him in the event it is diverted from the declared use, the instrument does not operate as a restraint upon alienation of the property, but merely expresses the grantor's confidence that the grantee will use the property so far as may be reasonable and practicable to effect the purpose of the grant. *Columbia Building Co. v. Cemetery of Holy Cross*, 155 Md. 221, 228, 141 A. 525, 528. Thus it

has been specifically held that a provision in a deed conveying land to a church and indicating the use to which the land is to be applied does not create an estate on condition. *Rydzewski v. Vestry of Grace and St. Peter's Church,* 145 Md. 531, 125 A. 717.

Of course, if an owner of property actually gives it to another, a resulting trust cannot arise. *Groff v. Rohrer,* 35 Md. 327, 335. A resulting trust arises only when the legal title is in one person and the beneficial interest is wholly or partially in another. We find nothing in the donors' letter in this case manifesting an intent that if the vestry failed to use the bonds for the purpose specified, the gift should be forfeited. The tenor of the letter is quite as consistent with an intent of the donors merely to repose confidence in the vestry that it would fulfill the designated purpose so long as it was necessary and proper to do so, as it is with an intent to impose upon the gift a condition subsequent compelling the vestry on pain of forfeiture to apply the gift as suggested.

Smallwood and Black further stated in the letter that if the vestry could buy out or extinguish the ground rent "at a price satisfactory to them," they could sell the bonds and apply the proceeds to the extinguishment of the ground rent. From this it is apparent that the benefactors considered the possibility that the ground rent could be extinguished for a sum less than the market value of the bonds. It seems to us unreasonable to believe that they would have expected some of their money back in case the specified purpose were accomplished without selling all or any of the bonds. Evidently, as they approached the end of life, they had in mind the thought that some church members might be more willing to contribute to the rector's salary or for objects of charity than toward the payment of rent or interest; so they were primarily concerned with the certainty of prompt payment of the basic obligation of the parish. It has been suggested by the American Law Institute that it is easier to find a manifestation of intention that

the transferee should keep the surplus where the transferor expresses a wish as to how the property should be used than where the transferor declares that he transfers the property in trust. Even when a trust has been created, and the trust has been fully performed without exhausing the trust estate, it is recognized that if the settlor manifested an intention that the trustee should keep the surplus if any should remain after the performance of the trust, the trust instrument may be interpreted as manifesting an intention that the trustee should keep the surplus free of trust, and no resulting trust arises. 2 *Restatement of Trusts,* Secs. 412, 413, 431. It is therefore our decision that there are no facts or circumstances in this case upon which to base a resulting trust in favor of the estates of the donors.

In No. 26—appeal of the St. James First African Church—it was argued that the bonds and accumulated cash were so intimately identified with the real estate that they were converted by the doctrine of equitable conversion into real estate and passed under the contract of sale to the Convention, and then under the assignment to St. James First African Church. But the doctrine of equitable conversion is not applicable in this case. The basis of the doctrine, under which real estate is considered for certain purposes as personal property, and personal property as real estate, is the intention of the party creating a right in the property. The doctrine is not a fixed rule of law, but proceeds upon equitable principles which take into account the result which its application will accomplish. *Anderson v. Yaworski,* 120 Conn. 390, 181 A. 205, 101 *A. L. R.* 1232. It is clear that the intention of Smallwood and Black was to make a gift to their own parish. We cannot presume that they would have intended to give $20,000 in bonds to any corporation, religious or otherwise, which might buy the property in the future.

*Decree affirmed, the costs to be paid out of the funds held by the custodian.*